Commonwealth *v.* Duncan, Appellant.

540

Argued June 11, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Ellen T. Greenlee*, Assistant Defender, with her *John W. Packel*, Assistant Defender, and *Benjamin Lerner*, Defender, for appellant.

*Neil Kitrosser*, Assistant District Attorney, with him *Mark Sendrow* and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., March 29, 1976:

On May 9, 1974, Deborah Hartman, a student at the University of Pennsylvania, was studying for an exam, alone in the lounge area of one of the dormitories. Between 12:30 A.M. and 1:00 A.M., appellant Darryl Duncan (who was not enrolled at the University) entered the lounge and spoke with Miss Hartman about using a

hot plate which was in the lounge area. Miss Hartman instructed appellant in the use of the hot plate, whereupon appellant boiled some water and left the lounge. Miss Hartman continued studying for her exam until she fell asleep shortly before 3:30 A.M. When she awoke a few minutes later, appellant was on a hassock in front of her, with his face in close proximity to her face. Appellant then requested a favor of Miss Hartman, saying, "I never ate a pussy before." Miss Hartman asked appellant to leave, but appellant continued his entreaties. In all, before leaving, appellant made his request "three or four times," and Miss Hartman asked appellant as many times to leave. "Upset" about the incident, and becoming increasingly concerned because she knew that appellant was not a resident of that dormitory, at approximately 6:00 A.M., Miss Hartman reported the incident to her resident adviser. Appellant was apprehended in the building and charged with criminal solicitation, criminal trespass, and possession of marijuana.

On May 16, 1974, appellant appeared with counsel at a summary proceeding in Philadelphia Municipal Court, at which time the above charges were dismissed and appellant was convicted of harassment. At a trial on October 8, 1974 in Common Pleas Court before a judge sitting without a jury, appellant was again found guilty of harassment, and was sentenced to pay a fine of one hundred ($100.00) dollars, or, failing to pay by November 8, 1974, serve thirty days in the Philadelphia County Prison. Appeal was taken to our Court from the judgment of sentence.

Appellant first argues that the evidence presented was insufficient to sustain his conviction of harassment; specifically, that no evidence was presented to show that he had committed acts or had engaged in a course of conduct proscribed by the harassment statute, and that no evidence was presented to show that he possessed the requisite criminal intent. The statute in question, 18 Pa. C.S. §2709, provides as follows:

"A person commits a summary offense when, with intent to harass, annoy or alarm another person:

. . . .

(3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."

Appellant contends that words alone cannot constitute a course of conduct or repeatedly-committed acts within the meaning of the statute. We believe that speaking can constitute a course of conduct within the meaning of the statute, given the proper circumstances, and we find that the proper circumstances exist in the case before us. Testimony of the prosecutrix, Miss Deborah Hartman, established that appellant approached her as she dozed on a couch in a dormitory lounge area. With his face in close proximity to hers, appellant made repeated requests that Miss Hartman permit him to engage in an illegal sexual act with her. Although Miss Hartman asked appellant to leave, he persisted in his re uests. Not until he had made three or four requests ar asked to leave three or four times did appellant finally desist. Miss Hartman made it clear from the beginning that she wanted to be left alone — that she was unfavorably disposed toward appellant's proposition. Had appellant accepted the initial rebuttal and not persisted in his efforts to persuade the young lady, clearly no crime would have been committed: §2709 requires *repetition* of the offensive conduct. Miss Hartman's replies made it clear, *or should have made it clear to a reasonable person,* that continued entreaties would be offensive to her. The lower court was justified in finding that appellant had engaged in a course of conduct which alarmed or seriously annoyed another person. Appellant argues that no evidence was presented to show that he possessed the requisite intent to harass. Our courts have often found that a defendant's intent to commit a criminal act may

be inferred from his words or actions when viewed in the light of all the attendant circumstances. See *Commonwealth v. Hornberger*, 441 Pa. 57, 270 A.2d 195 (1970); *Commonwealth v. Tyrell*, 405 Pa. 210, 174 A.2d 852 (1961); and *Commonwealth v. White*, 229 Pa. Superior Ct. 280, 323 A.2d 757 (1974). The lower court was also certainly justified in inferring from appellant's repeated requests and rebuttals that appellant was acting deliberately and with the intention of annoying the prosecutrix.

Appellant next argues that his conviction under the harassment statute was based solely on a verbal communication and therefore was in violation of his rights under the First Amendment to the United States Constitution. We find this argument unpersuasive. In *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), the Supreme Court stated:

> "[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words - those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

That obscenity is not within the area of constitutionally-protected speech was made clear by the Court in *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957): "All ideas having even the slightest redeeming social importance - unorthodox ideas, con-

troversial ideas, even ideas hateful to the prevailing climate of opinion - have the full protection of the guarantees, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment· is the rejection of obscenity as utterly without redeeming social importance." This position has been maintained in two recent cases, *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S. Ct. 2628, 37 L.Ed.2d 446 (1973), and *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed. 2d 419 (1973), the former involving obscene movies, *Miller* dealing with a California statute regulating the distribution of pornography through the mail. Appellant relies in his brief on *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed. 2d 284 (1971), in which the Supreme Court reversed the conviction of a petitioner who had been convicted under a California statute of "maliciously and wilfully disturb[ing] the peace or quiet of any neighborhood or person ... by ... offensive conduct ...." The petitioner in *Cohen* had been arrested for wearing, in a courtroom corridor, a jacket with the words, "F--- the draft." *Cohen* is distinguishable from the case before us in several respects, most obviously in that constitutionally protected political comment, however distastefully presented, was being made by the petitioner in that case. We find that appellant's lewd and non-political suggestions do not, in the case before us, have the protection of the First Amendment.

In recent years, our courts have given increased recognition to the right of individuals to be free of unreasonable intrusions on privacy. In 1949, the Supreme Court upheld an ordinance prohibiting the operation from vehicles in the streets of sound amplifiers or other instruments emitting "loud and raucous noises," saying: "The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech

in disregard of the rights of others would be harsh and arbitrary in itself." *Kovacs v. Cooper*, 336 U.S. 77, 88, 69 S.Ct. 448, 454, 93 L.Ed. 513 (1949). In *Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), the Supreme Court upheld a municipal ordinance prohibiting solicitors and peddlers from visiting private residences without the consent of the occupants, and in *Rowan v. United States Post Office*, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed. 2d 736 (1970), the Court upheld a federal statute, 39 USC §4009, which authorized mail recipients to require any mailer to remove the recipient's name from the mailer's lists and discontinue mailing to that person's address. In both cases, the Court balanced the householder's right to privacy with the right of others to communicate, finding in *Rowan* that "no one has a right to press even 'good' ideas on an unwilling recipient." 397 U.S. at 738, 90 S.Ct. at 1491. Continuing in this line, the Court decided *Colten v. Kentucky*, 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584, in 1972. In *Colten*, a friend of the petitioner had been stopped by a police officer for a traffic violation. In spite of several requests by the arresting officer that petitioner leave the area, petitioner refused, and was arrested for violating the state's disorderly conduct statute. The Supreme Court upheld the conviction, citing the Kentucky appellate court decision which said that the petitioner had not been undertaking to exercise any constitutionally protected freedom, but rather appeared to have as his purpose causing inconvenience and annoyance. *Colten* is particularly relevant to the case before us, in that it involved a disorderly conduct statute - a statute that differs from harassment statutes of the type involved in the case before us only in its proscription of conduct which constitutes a nuisance to the general public rather than to a particular individual.

With the enactment of 18 Pa.C.S. §2709, our legislature has sought to prohibit such conduct, including speech, which is not Constitutionally protected and which

is intended to alarm or seriously annoy another person. The purpose of the legislature, undoubtedly, was to extend to the *individual* the protections which have long been afforded the general public under disorderly conduct and breach of the peace statutes. The legislature has sought to prevent, not the initial impact of unwelcome intrusions upon privacy, but rather *repeated* assaults on individual privacy interests. In inviting the prosecutrix to engage in lewd and illegal[1] activity, appellant in the case before us was not expressing social or political beliefs or ideas or engaging in any legitimate conduct; in pressuring the young lady with his repeated suggestions, appellant was going beyond communication to invade a substantial privacy interest in an intolerable manner.

Appellant's final argument is that the harassment statute is vague and overbroad and therefore violative of the Fifth and Fourteenth Amendments to the United States Constitution. In *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), the Supreme Court stated the general rule on vagueness: "The Constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." 347 U.S. at 617, 74 S.Ct. at 812.[2] The Court has also stated that a statute will be found overbroad if it prohibits, in addition to conduct which the states may in the exercise of their police powers justifiably prohibit, conduct which is protected by the Constitution. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.

1. 18 Pa.C.S. §3124 and 18 Pa.C.S. §3101.

2. See *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed. 2d 605 (1974); *Rowan v. United States Post Office, supra; Roth v. United States, supra; United States v. Woodard*, 376 F.2d 136 (7th Cir. 1967).

2d 222 (1972); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed. 2d 408 (1972). In *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed. 2d 214 (1971), relied upon by appellant, the Supreme Court struck down for vagueness and overbroadness a local ordinance which prohibited three or more persons from assembling on any sidewalk and conducting themselves in a manner annoying to persons passing by. The Ohio Supreme Court had not indicated upon whose sensitivity - that of the judge or jury, the arresting officer, or a hypothetical reasonable man - a violation depended, but concluded that the ordinance was clear on its face. The United States Supreme Court declared the ordinance unconstitutional as subjecting the right of assembly "to an unascertainable standard," stating that men of common intelligence could only guess at its meaning. The Court ruled that the ordinance was also overbroad, since it authorized the punishment of activity which was constitutionally protected. We believe that *Colten v. Kentucky, supra,* is more pertinent to the case before us.

In *Colten,* the petitioner had been convicted of violating Ky.Rev. Stat. §437.016(1) (f) (Supp. 1968), which read as follows:

"(1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

....

"(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse ...."

The Kentucky appellate court had construed the statute as proscribing only conduct which was not constitutionally protected and which had as its predominant purpose causing public inconvenience, annoyance, or alarm. The Supreme Court concluded that the Kentucky court had justifiably found that the petitioner at the time of his arrest was not disseminating or receiving information or otherwise attempting to exercise any constitutionally

protected freedom, but rather had as his predominant purpose causing annoyance and inconvenience. The Court held that the statute as construed by the Kentucky courts was neither vague nor overbroad.

In enacting 18 Pa.C.S. §2709(3), our legislature did not intend to proscribe isolated acts which would be of only minor annoyance to the average person, or which are constitutionally protected. The statute requires a course of conduct or repeated acts which would seriously offend, we find, the average person; it requires the factfinder to infer a specific intent on the part of the accused, and it specifies that the conduct must be of a non-legitimate nature - conduct which is not constitutionally protected. Looking at the statute (as we construe it) in light of *Colten v. Kentucky*, we find that the statute is not unconstitutionally vague or overbroad.

Judgment affirmed.

JACOBS, J., concurs in the result.

DISSENTING OPINION BY HOFFMAN, J.:

Appellant challenges his conviction under §2709 of the Crimes Code[1] that proscribes "Harassment." I agree that the evidence presented at trial was insufficient to sustain appellant's conviction.

The essential facts are not disputed: On May 9, 1974, Deborah Hartman, a student at the University of Pennsylvania, was studying in the lounge of a university dormitory. At about 1:00 a.m., appellant, not a student at the university, entered the lounge and asked Ms. Hartman how to use the hot plate. After appellant boiled some water, he left. Thereafter, at about 3:30 a.m., Ms. Hartman, who had fallen asleep on a couch in the lounge, woke up with appellant leaning over the couch, his face in close proximity to hers. Appellant then asked if Ms. Hartman would do him a favor by allowing him to

---

1. Act of December 6, 1972, P.L. 1482, §1; 18 Pa. C.S. §101, et seq.

engage in cunnilingus. Ms. Hartman asked appellant to leave. He repeated his request three or four times before he departed. Ms. Hartman did not report the incident at that time due to the lateness of the hour and her desire to continue studying. She did, however, report the incident to her resident adviser shortly after 6:00 a.m.

Appellant was arrested during the same day and was charged with criminal trespass and criminal solicitation. On May 16, 1974, the Municipal Court judge discharged appellant on those charges, but found him guilty of "harassment," a summary offense, §2709, supra, and imposed a fine of $100. Appellant exercised his right to trial *de novo* in the Court of Common Pleas. On October 8, 1974, appellant was tried and found guilty of harassment and sentenced to pay a fine of $100 by the judge of the Court of Common Pleas.

Appellant raises three contentions: (1) that the evidence was insufficient to prove appellant's criminal intent and to prove a "course of conduct"; (2) that §2709 is violative of appellant's First Amendment rights[2]; and (3) that §2709 is unconstitutionally vague and overbroad.

Section 2709 provides that "[a] person commits a summary offense when, with intent to harass, annoy or alarm another person: ...

"(3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." The section attempts to proscribe behavior that is frightening

---

2. In a well-researched brief, appellant's counsel, the Philadelphia Defenders Association, raises an important issue of whether the government can constitutionally limit unpleasant verbal contact among its citizens. See, e.g., *Breard v. Alexandria*, 341 U.S. 622 (1951); *Free Speech v. Right to Privacy*, 48 Wash. L. Rev. 667 (1973); *Is There a Right Not To Be Spoken To*, 67 Nw. U. L. Rev. 153 (1972). But see, *Ginzburg v. United States*, 383 U.S. 463 (1966). The issue is one of more than academic interest; because I would read the statute narrowly so that more than speech must exist for there to be a prosecution, I do not reach this issue.

or unpleasant, but that does not constitute an assault or disorderly conduct. See Jarvis, Pennsylvania Crimes Code and Criminal Law, Law and Commentary, §2709; *People v. Smolen*, 69 Misc. 2d 920, 331 N.Y.S. 2d 98 (1972).[3] In trying to proscribe such behavior, the General Assembly must avoid criminalizing verbal conduct protected by the First Amendment or petty nastiness that simply does not rise to criminal conduct.[4] See Jarvis, supra; cf. Crimes Code, supra, 18 Pa. C.S. §312.

In a series of cases presenting a similar issue, the United States Supreme Court has made clear that a statute must be limited in application " '... to punish only unprotected speech' and not be 'susceptible of application to protected expression.' Gooding v. Wilson, [405 U.S. 518 (1972)]." *Plummer v. City of Columbus, Ohio*, 414 U.S. 2, 3, 94 S.Ct. 17 (1973). See also, *Cason v. City of Columbus, Ohio*, 409 U.S. 1053, 93 S. Ct. 565 (1972); *Rosenfeld v. New Jersey*, 408 U.S. 901 (1972); *Lewis v. City of New Orleans*, 408 U.S. 913 (1972); *Brown v. Oklahoma*, 408 U.S. 914 (1972). The statute in *Plummer* (Columbus City Code, §2327.03) provided that "[n]o person shall abuse another by using menacing, insulting, slanderous, or profane language." Id. The Court in *Plummer*, on authority of *Gooding*, supra, refused to give the statute a

---

3. See *Rosenfeld v. New Jersey*, 408 U.S. 901, 906, 92 S. Ct. 2479, 2481 (1972): "The Model Penal Code, proposed by the American Law Institute, also recognizes a distinction between utterances which may threaten physical violence and those which may amount to a public nuisance, recognizing that neither category falls within the protection of the First Amendment. See Model Penal Code §250.2(1) (a) and (b). (Proposed Official Draft 1962)."

4. There are several persuasive reasons for such a principle: (1) the state runs the risk of criminalizing generally accepted behavior, leaving the actor without reasonable notice that his conduct is criminal; (2) such incidents are too frequent for a justice system to handle them efficiently; (3) courts cannot be expected to arbitrate what are frequently personal disputes by use of the criminal process. Criminal sanction is too severe, too great a stigma, too costly to all parties, to allow the law to become a "Big Brother."

narrowing construction.[5] As stated in *Gooding*, supra, 405 U.S. at 520, 92 S.Ct. at 1105: "Only the [state] courts can supply the requisite construction, since of course 'we lack jurisdiction authoritatively to construe state legislation.' [citation omitted] ..." It follows that this Court must read §2709 so that it does not prohibit protected expression.[6]

I do not question the annoying nature of appellant's request. Women, in particular, are frequently subjected to "cat-calls" and sexual suggestions. Frankly, such behavior is reprehensible, and I cannot condemn it too strongly. But something more than a mere indecent request is necessary to come within §2709.[7] I do not believe that the Commonwealth proved more: the Commonwealth admits that the whole episode was brief; there was no evidence that Ms. Hartman was placed in apprehension for her safety; that she was cornered by appellant; that he menaced her in any way.[8] Her

---

5. It is conceivable, for instance, that the state court may have narrowed the statute by declaring that "menacing ... language" implied some kind of assaultive behavior.

6. Although I find appellant's suggestion to be lewd and one that clearly represented an annoyance to Ms. Hartman, the request does not fall into an unprotected area such a "fighting words." See *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942). Cf. *Commonwealth v. Piper*, 221 Pa. Superior Ct. 187, 289 A. 2d 193 (1972), aff'd 458 Pa. 307, 328 A. 2d 845 (1974), dissenting opinion by HOFFMAN, J.; the Supreme Court affirmed on the ground that all issues were waived and did not reach the issue raised in the dissenting opinion.

7. Given society's increasing sexual permissiveness, it is unclear whether the suggested act is still considered "indecent." See, e.g., *State v. Elliot*, 88 N.M. 187, 539 P. 2d 207, 17 C.L.R. 2333 (1975) ("police power does not extend to sodomitic acts between consenting adults"); Crimes Code, supra, 18 Pa. C.S. §3126 (excluding married couples from the prohibition against committing "indecent assault," basically sodomitic acts.).

8. There was testimony that appellant's face was close to that of Ms. Hartman when she woke up. There is no evidence that he touched her or that he continued the close physical proximity.

annoyance, although justifiable, was not sufficient to make the act criminal; appellant's words were not sufficiently continuous and persistent to amount to a "course of conduct" under the Act.[9]

Absent introduction of evidence of menacing behavior, the Commonwealth's evidence is insufficient to sustain a conviction for harassment. Because the Commonwealth failed to do so in the instant case, I would reverse.

DISSENTING OPINION BY PRICE, J.:

I dissent from the majority opinion and concur in the result reached by Judge HOFFMAN in his dissenting opinion. In my view, appellant's activity did not constitute a "course of conduct," nor did it amount to a criminal offense. *See Commonwealth v. Schnabel*, 236 Pa. Superior Ct. 280, 344 A.2d 896 (1975).

I do not feel compelled, however, to express an opinion as to the applicability of the First Amendment to the Constitution of the United States to this case. I cannot join in Judge HOFFMAN's dissenting opinion to the extent that he does so.

DISSENTING OPINION BY SPAETH, J.:

I agree with Judge HOFFMAN that more than an indecent request is necessary to support a conviction under section 2709(3) of the Crimes Code, Act of

---

9. The New York Supreme Court, the state trial division, has addressed similar problems under §240.25 of the New York Code, also derived from the Model Penal Code. In *People v. Smolen*, supra, the court reversed the defendant's conviction for harassment because the offensive speech was not accompanied by a battery and was not sufficiently continuous, repetitive and abusive to amount to a "course of conduct." In *People v. Hotchkiss*, 59 Misc. 2d 823, 300 N.Y.S. 2d 405 (1969), the court held that a single utterance did not amount to a "course of conduct." The court compared the demand of the statute of a course of conduct to the "Boy Who Cried Wolf" to indicate that some settled, continuous behavior was necessary.

December 6, 1972, P.L. 1482, No. 334, §1, eff. June 6, 1973, 18 Pa.C.S. §2709. The section provides that:

"[a] person commits a summary offense when, with intent to harass, annoy or alarm another person:

...

"(3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."

The behavior proscribed by this subsection is a "course of conduct" or "repeatedly commit[ted] acts." The terms "act" and "conduct" are specifically defined in the Preliminary Provisions of the Crimes Code, *supra*, 18 Pa.C.S. §103, as follows:

" 'Act' or 'action.' A bodily movement whether voluntary or involuntary.

...

" 'Conduct.' An action or omission and its accompanying state of mind, or, where relevant, a series of acts and omissions."

Thus a conviction under subsection three requires a showing of repeated bodily movements or a series of omissions; oral communications alone are by definition insufficient.

Here, in addition to the oral communications, the Commonwealth proved only that appellant's face was close to complainant's face when she awoke. No other movement or gesture was proved. From the proximity of appellant's face, a bodily movement may be inferred; however, it was only one movement or act, not the required "course of conduct."

That the legislature intended subsection 2709(3) to be inapplicable to situations involving words alone is further supported by a comparison of it with other provisions of the Crimes Code. As one commentator points out:

"The Code's provision for Simple Assault, §2701, requires 'bodily injury', unlike the former law, where simple assault included every offensive touching, no

matter how slight. This provision [§2709] is designed to cover an obvious potential loophole." S. Toll, Reporter's Comment, *Pennsylvania Crimes Code Annotated*, §2709 (1974).

The obvious loophole referred to is clearly harassment by offensive touching or bodily movement, not harassment by oral communication. The latter situation does not present a "loophole" since it is specifically dealt with in section 5504, which is entitled "Harassment by communication or address." That section provides:

"A person commits a misdemeanor of the third degree if, with intent to harass another, he:

...

"(2) makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language."

The legislature has thus covered each potential situation - bodily injury, non-injurious bodily movements, and offensive oral or written communications - with a distinct statutory section.[1]

The correctness of this interpretation is further demonstrated by a study of the New York harassment statute. Subsection three of §2709 was adopted verbatim from §240.25 of the New York Penal Law, L. 1965, c. 1030; amended 1967, c. 791, §41, eff. Sept. 1, 1967, §240.25, as were subsections one and two. The New York courts have interpreted their counterpart of subsection three to exclude situations of offensive language only.[2] In *People v. Paradiso*, 58 Misc. 2d 370, 295 N.Y.S. 2d 561 (1968), for example, the defendant allegedly used abusive and obscene language at the home of the complainant.

---

1. The issue of the constitutionality of legislation criminalizing non-injurious petty behavior resulting in minor private annoyance is not now before us, although it may be noted that when it does arise that issue will require careful examination. *See* dissenting opinions of Judges HOFFMAN and PRICE.

2. Harassment by abusive language is covered in a separate subsection of §240.25.

The court there held that such behavior did not fall within the counterpart of subsection three since the definitional section

> "... of the Penal Law defines 'Act' as 'a bodily movement' and 'Conduct' as 'an act or omission and its accompanying mental state.' It appears therefore that the use of abusive and obscene language is not an act within the meaning of the Penal Law or a course of conduct within the meaning of the same. It is therefore not prosecutable except where expressly provided under the Penal Law." 58 Misc. 2d at 374, 295 N.Y.S. 2d at 564-5.

And in *People v. Smolen*, 69 Misc. 2d 920, 331 N.Y.S. 2d 98 (1972), where the defendant, observing a police officer attempting to serve a summons on a peddler, asserted that the peddler was being unjustly harassed and accused the policeman of taking bribes, the court concluded "that the offensive speech directed at the police officer neither accompanied by a physical battery, nor being of a continuous and repetitive nature so as to amount to a course of conduct, does not support a charge of harassment." 69 Misc. 2d at 922, 331 N.Y.S. 2d at 101.

Even if prosecution for oral communications were permitted under subsection three, however, I, like Judges HOFFMAN and PRICE, do not believe the requirement of a course of conduct has been met. Although appellant may have repeated his oral statement three or four times, the repetition was during a single encounter only minutes in length. This is not enough to constitute a course of conduct, which implies not one isolated incident but, rather, a pattern of conduct embracing several incidents.

Once again New York law is instructive. For example, in *People v. Caine*, 70 Misc. 2d 178, 333 N.Y.S. 2d 208 (1972), the defendant was charged with harassment under the New York counterpart of subsection three when he behaved offensively to a police officer who had stopped him for a traffic violation. While the officer

was writing the ticket, the defendant approached him and argued with him. At the advice of the officer, he went back to his car but returned shortly and uttered obscenities at the officer. When asked by the officer what he had said, the defendant repeated the remark. When the officer advised him to return once more to his car, further obscenities were uttered and after questioning by the officer, were repeated. The court held that this encounter was a single episode of immature behavior not amounting to a course of conduct. Similarly, in *People v. Smolen, supra,* although several accusations were made against the police officer, and some pushing and shoving occurred, the court held that the behavior was not so continuous and repetitive as to constitute a course of conduct. 331 N.Y.S. 2d at 101.

I would reverse the judgment of sentence.