## Commonwealth v. Spiropoulos

*David W. Addy, assistant district attorney,* for the Commonwealth.
*Stephen P. Vlossak,* for defendant.

LAVELLE, *P.J.,* May 13, 1992—On September 24, 1991, we found defendant, Christos T. Spiropoulos, guilty of harassment (18 Pa.C.S. §2709(3)). Before us for disposition is Spiropoulos's post-verdict motions in the nature of motions for new trial and in arrest of judgment.

### FACTUAL BACKGROUND

The facts are straightforward and uncontroverted.
On August 22, 1990, Spiropoulos was involved in an automobile accident with a Mrs. Greenzweig. Trooper Mark George of the Pennsylvania State Police investigated the incident. He prepared an accident report which found Spiropoulos at fault and issued him a citation for a stop sign violation. Trooper George's citation prompted defendant to write two letters.

Spiropoulos first sent a letter to Trooper George's superior, Sergeant Romanisko, asking him to review and amend the accident report because it was a "disgrace" and "[i]t has so many errors (deliberate and careless) that it discredits itself.'' See Commonwealth's exhibit 3.

Spiropoulos then sent a letter to his insurance company explaining in detail how conclusions in Trooper George's accident report were erroneous. Specifically, Spiropoulos stated that "[t]he investigation and report are slipshod, inaccurate and deliberately biased to accommodate Mrs. Greenzweig (driver of unit 2) who happens to be a personal friend of Trooper George." Spiropoulos further stated that "Trooper George also admitted to having an established friendship/acquaintance with Mrs. Greenzweig's son.'' See Commonwealth's exhibit 2.

In response to these letters and allegations, the state police began an internal investigation of Trooper Mark George.

On February 12, 1991, Spiropoulos's wife was stopped by Trooper George and was issued a citation for speeding. Spiropoulos then sent Trooper George a letter accusing him, among other things, of corruption and of harassing his wife.[*]

---

[*] The letter to Trooper George is as follows:

"Mark George,

"Why are you holding a grudge? *I'm* the one that should be holding a grudge—not you. Your department stood behind you. As for me, I still think you're a corrupt cop that falsified a police accident report. But hey, why should you care what I think?...

"Hey George, I have no problem with writing my wife a ticket, she admitted that she was driving over 60 in a 55 zone.... But why couldn't you just write the damn ticket? Why all the harassment? You had to detain her, call for backup and do a vehicle inspection

Trooper George testified that because of defendant's letter writing, his advancement in the state police might be impaired and this caused him to be extremely annoyed and disturbed.

## DISCUSSION

Spiropoulos contends that the evidence was legally insufficient to convict him of harassment. Upon a more studied and careful review of the record, we agree.

In order to convict Spiropoulos, the Commonwealth has the burden of proving each element of the crime beyond a reasonable doubt. *Commonwealth v. Williams,* 463 Pa. 370, 344 A.2d 877 (1975).

Harassment requires a course of conduct or repeated acts which would seriously offend the average person; it requires the fact-finder to infer a specific intent, to harass, alarm or annoy on the part of the accused, and it requires that the defendant's conduct must be of a non-legitimate nature, i.e. conduct which is not con-

---

on top of it? And those cute little comments! By the way, do you introduce yourself and your barracks to all the people you stop? She knew who you were, and you knew who she was.

"Who was the corporal? Was it the same corporal that you said knows Greenzweig? No doubt he'll be your witness to confirm that no harassment took place.

"That's O.K. Marky. I know that someday I'm going to experience a lot of satisfaction when I read in the newspaper about your arrest for being a corrupt cop. I *know* it will happen because it's only a matter of time before you graduate to 'bigger things.' That's the way corruption is. It always starts with small things (like lying and harassment), but soon it grows like a cancer. *You've* got that cancer.

"In the meantime, do your job but *DON'T YOU EVER* HARASS MY WIFE AGAIN!

"Chris Spiropoulos"

stitutionally protected. See *Commonwealth v. Duncan,* 239 Pa. Super. 539, 363 A.2d 803 (1976).

Here, the Commonwealth has failed to prove beyond a reasonable doubt that Spiropoulos was engaged in a "course of conduct" which served "no legitimate purpose."

Spiropoulos wrote the first letter to Trooper George's superior, Sergeant Romanisko. Essentially, it sought, in strong language, a supervisory review of an employee's decision. We should not and will not infer a criminal intent to harass when an aggrieved citizen seeks redress of a grievance by writing a letter of complaint to a law enforcement official.

Spiropoulos wrote the second letter to his insurance company. He clearly had the right to protect his insurance coverage and explain what he perceived to be errors in the accident report. His conclusion that his arrest by Trooper George was based on his friendship with the other driver might be defamatory and actionable civilly. We cannot say, however, that the letter served "no legitimate purpose" or that it was intended to harass or annoy Trooper George. To draw such an inference requires that we make a quantum speculative leap.

Spiropoulos's third letter to Trooper George had no legitimate purpose. Its vituperative tone, its imputation of devious motives and its unsubstantiated charges of harassment and corruption patently showed an intent to harass and annoy. This letter, however, establishes only one act which annoyed or alarmed Trooper George. By itself, this letter cannot constitute the offense of harassment.

In *Commonwealth v. Schnabel,* 236 Pa. Super. 280, 344 A.2d 896 (1975), the Superior Court, in interpreting 18 Pa.C.S. §2709(3), told us that "[a] single, isolated act cannot be regarded as a course of conduct, entailing

criminal sanctions." "It is a pattern of conduct composed of same or similar acts repeated over a period of time, however short, which establishes a continuity of purpose in the mind of the actor." *Id.* See also *Commonwealth v. Stull,* 1 D.&C.4th 24 (1988).

Because the first two letters arguably had a "legitimate purpose" and were within the parameters of constitutionally protected free speech, they cannot be used to establish a course of conduct. The third letter alone does not establish the "course of conduct" which the harassment statute requires.

Our decision in this case finds support in the rationale of *Commonwealth v. Bender,* 248 Pa. Super. 504, 375 A.2d 354 (1977), where the Superior Court addressed a case factually similar to the instant case. There, Bender applied for a gun permit. Believing that his application was handled improperly by Officer Smolensky of the Pittsburgh Police Department, Bender orally complained to the city's Internal Affairs Division. I.A.D. dismissed the complaint as groundless. Bender then lodged a written complaint with I.A.D. asserting that the officer had violated his constitutional rights and had insulted him. Bender then called Officer Smolensky's supervisor two or three times. Officer Smolensky testified that he believed that his promotional prospects would be substantially impaired and that the complaints upset him so much that they aggravated a pre-existing nervous condition, which made him sick for two days. In reversing Bender's conviction, the Superior Court stated:

"In the case at bar, however, appellant's [Bender's] actions are ostensibly protected by the United States and Pennsylvania Constitution which guarantee citizens the right to petition the government for a redress of grievances and to speak freely. We should be extremely

reluctant to infer a criminal intent to harass solely from the filing of complaints with appropriate government agencies and the making of telephone calls during regular office hours lest we impermissibly chill a citizen's constitutional freedoms. *Zwickler v. Koots,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

"Indeed, police officers must expect, as part of their jobs exposing them to daily contact with distraught individuals in emotionally charged situations, to confront and answer accusations of rudeness and improper conduct."

Based on the foregoing analysis, we enter the following

## ORDER OF COURT

And now, May 13, 1992, it is hereby ordered and decreed that defendant's motion in arrest of judgment is granted and we enter an amended verdict of not guilty.