## Commonwealth v. Kozak

*Robert T. Linsenamyer, assistant district attorney,* for the Commonwealth.
*Stephen Swem,* for defendant Brad Kozak.
*Ralph Karsh,* for defendant Anthony S. Tominello.

DAUER, *J.,* July 6, 1993—Although it is unusual, if not unique, to file an opinion where the court sustains an unappealable demurrer ruling that the evidence presented by the prosecution is insufficient in point of law

to meet its burden of proving the charges beyond a reasonable doubt, because of the distortions of the news media and misconceptions of well-intentioned politicians concerning the disposition of the above-captioned cases, we are constrained to clarify the record.

These two prosecutions were based on allegations of violations of the Ethnic Intimidation Act, the so-called "Hate Crime" Act.

On October 4, 1992, Carlos Willets and his wife, Lisa Ervin, a biracial couple who have been married for eight years and have three young children, were in the living room of their home on Second Street in the Borough of Pitcairn.

While watching television, Ms. Ervin's attention was diverted to the front window when she thought she saw something burning outside. Mr. Willets went to the window and told his wife there was a cross in flames in their front yard. He testified that he saw as many as 10 persons running from the scene.

Ms. Ervin, naturally terrified, immediately called the Pitcairn police. Mr. Willets went outside, knocked the cross to the ground and trampled out the fire. He testified that if the cross had tumbled over by itself, it would have fallen upon concrete.

Pitcairn police officers Stiffey and Conley happened to be in the neighborhood on routine patrol and immediately answered the radio call to investigate the reported cross burning. Officer Stiffey testified that the Pitcairn police had received two calls. The first was received at 12:34 a.m. reporting a strong odor of gasoline in the four hundred block of Second Avenue. The caller was not identified. The second call was received at 12:47

reporting a cross burning at 427 Second Avenue. This apparently was the call of Ms. Ervin.

When the police arrived, the cross was still burning although Mr. Willets was in the process of extinguishing the flames. The police also noted that there were two small puddles of gasoline on the concrete walk about 10 feet from the cross and 15 feet from the house.

They also saw three young men running from the area in different directions. They were able to apprehend one of these men, the defendant Brad Kozak, on the spot.

Kozak told the police officers that he had been walking down the street when he came upon the incident but that he had nothing to do with it. He kept insisting that the police smell his hands.

Kozak gave the police officers the names of two people he recognized in the area, a Mr. Carbo and "Anthony." He did not give, and apparently was not asked, Anthony's last name.

The police immediately afterward arrested defendant Anthony S. Tominello, who they had talked to approximately one hour before concerning a traffic ticket. The ticket had been placed on the windshield of Mr. Tominello's car for being parked in an alley in violation of a borough ordinance. Mr. Tominello had sought out the police and complained about the unfairness of the citation as there are no posted "no parking" signs and he was unaware of the ordinance.

The police officers seized each of the defendants' tennis shoes.[1] These were sent to the Allegheny County De-

---

1. Although there is certainly some question as to the probable cause for seizing these shoes without a warrant, the court denied

partment of Laboratories, crime lab, and tested positively for the presence of "weathered gasoline" on their soles.

This evidence was admitted although the test had been conducted by Mr. Joseph Abati, who at the time of trial was no longer employed at the crime lab, who had not been subpoenaed, and whose whereabouts were apparently unknown to the prosecution.

The results of the test were testified to by Mr. William Pritchard, an employee of the crime lab, from what allegedly was Mr. Abati's written report.

The prosecution rested in both cases and the defendants demurred. The court sustained the demurrers not on the grounds that the ethnic intimidation statute is in any way flawed, although it may be if it is used to prosecute cross burnings such as in these cases, but the demurrers were sustained simply on the grounds that the prosecution's evidence failed to prove the statutory elements of the crimes charged.

Each of the defendants in these cases was charged with ethnic intimidation, recklessly endangering another person, criminal conspiracy, and the summary offenses of criminal mischief and harassment. It is axiomatic in criminal law that criminal statutes be strictly construed; and to obtain a conviction, each element of an alleged crime must be proven beyond a reasonable doubt and the accused be proven beyond a reasonable doubt to be the person who committed the crime. It is therefore es-

---

suppression on the theory that suspected gasoline on the shoes because of its high volatility would have evaporated by the time a warrant could have been obtained.

sential to understand each of the elements of each of the crimes charged in these cases.

## I. ETHNIC INTIMIDATION

The Act of June 18, 1982, P.L. 537, no. 154; 18 Pa.C.S. §2710 states:

"(a) A person commits the offense of ethnic intimidation if, with malicious intention toward the race, color, religion or national origin of another individual or group of individuals, he commits an offense under any other provision of this article or under chapter 33 (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) or under section 3503 (relating to criminal trespass) or under section 5504 (relating to harassment by communication or address) with respect to such individual or his or her property or with respect to one or more members of such group or their property."

The other offenses referred to "under any other provision of this article," article 27, are the following:

| Section | Charge |
| --- | --- |
| 2701 | Simple assault |
| 2702 | Aggravated assault |
| 2703 | Assault by a prisoner |
| 2704 | Assault by a life prisoner |
| 2705 | Reckless endangering another person |
| 2706 | Terroristic threats |
| 2707 | Propulsion of missiles into an occupied vehicle or onto a roadway |
| 2708 | Use of tear or noxious gas in labor disputes |
| 2709 | Harassment |

This Act plainly states that for a person to commit the offense of ethnic intimidation, he must commit one of these other offenses "with malicious intention toward the race, color, religion or national origin" of the victim or victims. The offense is predicated or "piggybacked" on the conviction of the accused for one of these other crimes. Therefore, to obtain a conviction for ethnic intimidation in these cases, the Commonwealth had to obtain a conviction on, at least, one of the other underlying crimes charged; reckless endangering another person, criminal mischief, or harassment.

## II. RECKLESSLY ENDANGERING ANOTHER PERSON

The Act of December 6, 1972, P.L. 1482, no. 334; 18 Pa.C.S. §2705 states:

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

There was no evidence presented by the Commonwealth in these cases that anyone, with the possible exception of whoever ignited the cross, was ever in danger of death or serious bodily injury. The cross in this case, which according to the testimony, was five feet high and placed in the ground eight feet from the brick and concrete house. Even if it had fallen toward the house, it could have done no damage.

The two pieces of wood which formed the cross were placed in evidence. This was obviously not the type of cross depicted by Hollywood in cinema epics about the Ku Klux Klan cross burnings in Georgia and Mississippi

but rather consisted of two sticks about two inches wide and a quarter inch thick.

There was no evidence that any gasoline or other accelerant had been poured on the cross or that the victims' home was in any danger whatsoever.

The prosecution did not, and could not, prove and certainly did not prove beyond a reasonable doubt any of the elements of this crime; and the demurrers were properly sustained. This charge should not have been held for court at the preliminary hearing.

## III. CRIMINAL MISCHIEF

The Act of December 6, 1972, P.L. 1482, no. 334; 18 Pa.C.S. §3304 states:

"A person is guilty of criminal mischief if he:

"(1) damages tangible property of another intentionally, recklessly or by negligence in the employment of fire, explosives or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe);

"(2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property; or

"(3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat."

There was no evidence presented by the prosecution that any property was damaged at all or that anyone was endangered by tampering with the tangible property of another (granting that placing the cross in the ground on the victim's property can be construed as "tampering" with the tangible property of another. Neither was there

any evidence of any pecuniary loss suffered by the victims by reason of deception of threat.

The prosecution did not, and could not, prove and certainly did not prove beyond a reasonable doubt any of the elements of this crime and the demurrers were properly sustained. This was another charge that should not have been held for court at the preliminary hearing.

## IV. HARASSMENT

The Act of December 6, 1972, P.L. 1482, no. 334; 18 Pa.C.S. §2709 states:

"A person commits a summary offense when, with intent to harass, annoy or alarm another person:

"(1) he strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same; or

"(2) he follows a person in or about a public place or places; or

"(3) he engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."

There was obviously no evidence that anyone was struck, shoved, kicked or otherwise subjected to physical contact or any attempt or threat of such; nor did anybody follow anybody in or about a public place.

There was no evidence of any repetition of alarming or annoying acts. This was a solitary act, and the courts have repeatedly held that proof of one act that may be annoying or alarming to another person is not sufficient under the "course of conduct" requirement of this section

to establish the crime of harassment. *Commonwealth v. Duncan,* 239 Pa. Super. 539, 363 A.2d 803, 1976.

In the absence of any other evidence that these defendants annoyed in any way the victims in these cases, this court had no alternative but to sustain the demurrers.

Therefore, since there was no evidence of any of the predicate or underlying alleged crimes, the charges of ethnic intimidation must also fail.

The Commonwealth presented no evidence, direct or circumstantial, on the other charge in these cases, criminal conspiracy which requires an agreement to commit a specific crime and an overt act in pursuance of that crime, nor was any argument made by the prosecuting attorney to attempt to substantiate this charge. There could be no other decision than to sustain the demurrers.

There is no question that cross burning on the lawn of a biracial couple is ethnic intimidation, but whatever was the intention of the legislature, a solitary cross burning which does not pose a threat of death, bodily injury or property damage regrettably does not violate Pennsylvania law.

The Ethnic Intimidation Act could be used effectively in many cases such as where assaults result from the use of racial epithets; or where swastikas are spray painted on synagogue doors; or even where a burning cross actually endangers or damages the property of another; but, like all criminal statues, it must be strictly construed and its use is limited by its own terms.

Nevertheless, cross burning, an iniquitous device of the Ku Klux Klan in their buffoonish crusade for white supremacy, Native Americanism (not inclusive of the

American Indian), and Protestant Christianity in the South after the Civil War and throughout the United States after the First World War is obviously an act of ethnic intimidation. This asinine desecration of a symbol of their own faith was intended to terrorize helpless minorities and was successful in that the cross burning in most cases was but a prelude to murder, arson, savage assaults and rape.

Intolerance and discrimination have existed since the dawn of history. The hatred of man for his fellow man has resulted in slavery, caste systems and tyranny usually in the name of economic necessity; the torture and slaughter of the Inquisition in the name of religious integrity; and the Holocaust of millions in the name of racial purity.

Intolerance, one would think, would be abhorrent to all Americans since the very founding of this nation was the result of discrimination by the English Sovereign and his government against English citizens who lived in the colonies. But "Americans" have managed to show intolerance to immigrants of Irish, Jewish, African, Chinese, Japanese and lately Hispanic extraction.

The mentally impotent nincompoops who demonstrate their hatred by intimidating, threatening, or actually hurting others physically, emotionally, or economically, because of the color of their skin, the nationality of their forefathers, their religious or lack of religious beliefs, or even their sexual preference must be curtailed and punished by our criminal laws.

The Ethnic Intimidation Act itself should be amended to include besides malicious intent, recklessness, which is defined in criminal law as conscious risk creation,

or the state of mind in which a person knows that he is creating risks or harm.

The Ethnic Intimidation Act as now written, since it includes the crime of recklessly endangering another person as an underlying crime, requires a person to have an intent to do something reckless, a conflict in terms that could result in a constitutional challenge of the act for vagueness.

To include solitary cross burnings, as in these cases, I would respectfully suggest to the legislature that they do not specifically prohibit cross burnings, which the news media reported that I advocated, because of the potential constitutional challenges based on freedom of expression guaranteed by the First Amendment, but rather an amendment to section 2709 of the Crimes Code, harassment, to include not only a "course of conduct" or repeated acts but also any *single* act considering the surrounding circumstances, that would alarm, seriously annoy or terrorize another person.

The Ethnic Intimidation Act could also be amended to include criminal trespass as an underlying offense. Section 3503 of the Crimes Code, criminal trespass, should be enhanced to include an entry onto the property of another for the purpose of alarming, seriously annoying or terrorizing the owner or occupant thereof.

Finally, even aside from the legal problems in these cases as delineated above, there was no evidence that either of the defendants did anything other than be at the scene or at least in the vicinity. Being there, by itself, is not sufficient in criminal law to sustain a conviction. The charges against each of the defendants were properly dismissed, and any other result would have been as insidious as the crimes with which they were accused.