J-A13029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
:
v.         :
:
:
LYNN ADELE HARMER      :
:
Appellant     :   No. 2986 EDA 2016

Appeal from the Judgment of Sentence August 25, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-SA-0000689-2016

BEFORE:   LAZARUS, J., OTT, J. and FITZGERALD, J.[*]

MEMORANDUM BY OTT, J.:                          **FILED JULY 14, 2017**

Lynn Adele Harmer appeals from the judgment of sentence imposed August 25, 2016, in the Montgomery County Court of Common Pleas.  The trial court found Harmer guilty of two counts of harassment (course of conduct),[1] and imposed a fine of $300.00, plus costs, on each count.  On appeal, Harmer contends the trial court erred and abused its discretion when it failed to find her actions were constitutionally protected activity.  For the reasons below, we affirm.

The charges in this matter arose *via* two summary citations for harassment issued by the Lower Salford Township Police Department in

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S § 2709(a)(3).

December 2015, and March 2016.  Harmer resides at 480 Freeman School Road in Harleysville, Pennsylvania.  The victims of her crimes were her next door neighbors – Marian Kidd, her son Joseph Kidd, his wife Nicole, and their two young children - who live at 490 Harleysville Road, Harleysville, Pennsylvania.  As the trial court explains, Harmer's "hostility at her neighbors stems from a disputed property line and the usage of a shared driveway."  Trial Court Opinion, 11/9/2016, at 2.

The court summarized the incidents leading to the present charges as follows:

> The episodes of aggressive behavior which gave rise to this case started in December of 2015, when [Harmer] exited her home and began yelling at Joseph Kidd, as he parked his sister-in-law's car.  The police were called as a response to the incident and as a result the first citation was issued.  A hearing on the citation was conducted in Magisterial District MDJ-38-1-24 before the Honorable Albert J. Augustine, Magistrate on March 9, 2016.  This Court gleaned from the trial testimony, that Judge Augustine issued a verbal order, directing that the parties not have any contact with each other.  The day after the hearing, on March 10, 2016, [Harmer] entered onto the property of the victim family, in violation of the verbal order from Magistrate Augustine, and destroyed and removed a rose bush from in front of a flagpole located on the property belonging to the Kidd family.[6]  The conduct of [Harmer] alarmed victim Nicole Kidd so much, that she began to record the activities of [Harmer] that day, on her iPad, from the inside of her home.  [Harmer] received a citation … as a result of that incident.  Yet, in spite of the criminal citations and 'stay away' order, [Harmer] continued to victimize the Kidd family.  On April 7, 2016, [Harmer] began to scream at victim Mari[a]n Kidd, after she had backed her car into a parking space, and as she attempted to enter her home.  During that episode [Harmer] was observed with a hammer in her hand.[7]  [Harmer] was also observed as she placed metal stakes along the shared driveway.  Joseph Kidd, also recorded

video of instances where [Harmer] can be seen engaged in rants and tirades, directed toward his family members.

_____

> [6] [Harmer] testified on cross examination that "I never thought that he meant that I verbally couldn't say something to them.["] N.T. at pg. 49.
>
> [7] [Harmer] testified on cross examination, that she had a hammer and a stake to plant grass. N.T. at pg. 49.

*Id.* at 2-3 (some footnotes and record citations omitted).

On June 16, 2016, Harmer appeared before a magisterial district justice, and was found guilty on both the summary citations. She filed a timely appeal to the trial court, which conducted a *de novo* trial on August 25, 2016. During the trial, the Commonwealth played for the court the videotaped episodes of Harmer's behavior, which the Kidds had recorded on their iPad.[2] Harmer testified in her own defense, asserting she owns the property in question, and had "every right to take a rosebush or plant grass[.]" N.T., 8/25/2016, at 41. At the conclusion of trial, the court found Harmer guilty of two counts of summary harassment, and imposed a $300 fine, plus costs, on each count. This timely appeal follows.[3]

_____

[2] Although the videos were marked for identification, and moved into evidence, they were not included in the certified record because they were retained by the Kidds on their iPad. **See** N.T., 8/25/2016, at 15, 21.

[3] On September 23, 2016, the trial court ordered Harmer to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Harmer complied with the court's directive and filed a concise statement on October 11, 2016.

On appeal, Harmer contends the trial court erred in failing to conclude her actions were "constitutionally protected activity," and therefore, not prosecutable under the harassment statute.[4]   18 Pa.C.S. § 2709(e).   *See* Harmer's Brief at 7, 13.   Specifically, she insists her "activities were motivated by and consisted of her desire and effort to acquire, possess, and protect her property[,]" which she accomplished through her constitutional right to "free speech and redress of grievances."   Harmer's Brief at 7. Moreover, Harmer maintains that although the trial court recognized this was a property dispute, it "refused to consider allowing defining evidence on that matter[,]" and, consequently, violated her due process right to fundamental fairness.   *Id.* at 9.   Furthermore, Harmer argues the Commonwealth failed to prove she acted with the requisite intent to harass or annoy the Kidds and without any legitimate purpose.   *Id.* at 11-12.

We regard Harmer's issues on appeal as a challenge to the sufficiency of the evidence supporting her convictions.   Our standard of review of such claims is well-settled:

> Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, and taking all reasonable inferences in favor of the Commonwealth, the

---

[4] We note Harmer purports to raise two issues on appeal:   the first, addressing her constitutional right to protect her property, and the second, addressing her constitutional right to free speech and redress of grievances. *See* Harmer's Brief at 7, 13.   However, in her second issue, she simply incorporates the arguments from her first issue.   *See id.* at 13.   Therefore, we will address the issues together.

> reviewing court must determine whether the evidence supports the factfinder's determination of all of the elements of the crime beyond a reasonable doubt.
>
> The fact-finder "bears the responsibility to resolve questions of credibility, and, absent extraordinary circumstances, an appellate court will not substitute its judgment for that of the factfinder."  A court "is free to believe all, some, or none of the evidence presented."  "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt."

***Commonwealth v. Blackham***, 909 A.2d 315, 319 (Pa. Super. 2006) (internal citations omitted), *appeal denied*, 919 A.2d 954 (Pa. 2007).

Here, Harmer challenges her conviction of two counts of harassment. A person may be guilty of harassment "when, with intent to harass, annoy or alarm another, the person … engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]"  18 Pa.C.S. § 2709(a)(3).  The statute defines "course of conduct" as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct."  ***Id.*** at § 2709(f).  Furthermore, this Court has held that a defendant's "intent to harass may be inferred from the totality of the circumstances" and "[a] course of conduct … can be based on words alone."  ***Commonwealth v. Lutes***, 793 A.2d 949, 961 (Pa. Super. 2002) (citations omitted).  Significant to this appeal, the statute also explicitly provides:  "This section shall not apply to constitutionally protected activity."  18 Pa.C.S. § 2709(e).

There is a dearth of case law interpreting what constitutes "constitutionally protected activity" as to avoid prosecution for harassment.[5] *Id.* In **Commonwealth v. Duncan**, 363 A.2d 803 (Pa. Super. 1976) (*en banc*), an *en banc* panel of this Court considered whether a defendant's repeated request that the complainant engage in a sexual act with him constituted harassment. The complainant, who had been sleeping in the lounge of her dormitory, rebuffed the defendant several times and asked him to leave. When he finally did, she reported the incident to her resident adviser. **See id.** at 805. On appeal from his conviction of harassment, the defendant argued, *inter alia*, "his conviction … was based solely on a verbal communication and therefore was in violation of his rights under the First Amendment to the United States Constitution." **Id.** at 806. However, the *en banc* panel disagreed, noting "the right of free speech is not absolute at all time and under all circumstances." **Id.**, quoting **Chaplinksy v. New Hampshire**, 315 U.S. 568, 571 (1943). The panel concluded that the

_____

[5] We note subsection (e) was not added until June of 1993, and originally read as follows: "This section shall not apply to conduct by a party to a labor dispute as defined in the act of June 2, 1937 (P.L. 1198, No. 308), known as the Labor Anti-Injunction Act, **or to any constitutionally protected activity**." 1993, June 23, P.L. 124, No. 28, § 1, imd. effective (emphasis added). Effective January of 2016, the statute was further amended to reflect its current form, and omit the language regarding labor disputes. 2015, Nov. 4, P.L. 224, No. 59, § 1, eff. 60 days [Jan. 4, 2016].

defendant's "lewd and non-political suggestions do not … have the protection of the First Amendment."[6] **Duncan**, **supra**, 363 A.2d at 806.

The following year, in **Commonwealth v. Bender**, 375 A.2d 354 (Pa. Super. 1977) (*en banc*), the *en banc* Court vacated a defendant's harassment conviction, finding that his actions were "ostensibly protected by both the United States and Pennsylvania Constitutions which guarantee citizens the right to petition the government for a redress of grievances and to speak freely." **Id.** at 359. In that case, the defendant was convicted of harassment after he lodged complaints against two police officers with the Internal Affairs Division and the Mayor's Service Office, based on his belief they had mishandled his gun permit application. He continued to pursue the complaints "even though he was repeatedly informed that the police officers had followed appropriate procedures[.]" **Id.** at 358. In vacating the conviction, the *en banc* panel commented: "We should be extremely reluctant to infer a criminal intent to harass solely from the filing of complaints with appropriate government agencies and the making of telephone calls during regular office hours lest we impermissibly chill a citizen's constitutional freedoms." **Id.** at 359.

In **Commonwealth v. Wheaton**, 598 A.2d 1017 (Pa. Super. 1991), a panel of this Court once again vacated a defendant's conviction of

_____

[6] As explained in footnote 5, **supra**, at the time of the defendant's conviction, the statute did not include the subsection (e) exemption.

harassment. There, the defendant disputed a bill sent to him by the Water Association. *See id.* at 1018. In doing so, he visited two of the water trustees, one at a barber's shop and the other at the trustee's home, and threatened to file a lawsuit if his water service was terminated. *See id.* Although the panel did not discuss the defendant's actions in constitutional terms, it did find that the defendant acted with a "legitimate purpose," and again cautioned trial courts from "finding that a criminal intent can be inferred from making complaints." *Id.* at 1020.

Our research has uncovered only one published decision applying subsection (e) to the facts of the case - *Commonwealth v. Burlingame*, 672 A.2d 813 (Pa. Super. 1996). However, in that case, the defendants were charged with harassment based on their conduct while picketing their employer's business **during a labor dispute**. *See id.* at 814. The trial court granted the defendants' motion for habeas corpus, concluding "since [the defendants] were parties to a labor dispute at the time they engaged in [the offensive] conduct, the provisions of section 2709(e) required dismissal of the harassment charges."[7] *Id.* The Commonwealth appealed the dismissal of the charges, and a panel of this Court affirmed, holding:

---

[7] As noted *supra*, at the time the **Burlingame** defendants were arrested, subsection (e) of the harassment statute read as follows: "This section shall not apply to **conduct by a party to a labor dispute** as defined in the act of June 2, 1937 (P.L. 1198, No. 308), known as the Labor Anti-Injunction
*(Footnote Continued Next Page)*

> Section 2709(e) provides, quite simply, that section 2709 of the Crimes Code, which defines the crime of harassment, does not apply to conduct by a party to a labor dispute as that term is defined by the Labor Anti–Injunction Act. Since it is beyond question that [the defendants'] conduct, however offensive, occurred during a labor dispute to which they were parties, it is shielded from prosecution under the harassment statute and the charges were properly dismissed.

*Id.* Therefore, while the panel found subsection (e) excused the defendant's conduct, it did not do so on the same grounds alleged herein.

In the present case, the trial court concluded that Harmer's actions were not constitutionally protected. First, the court distinguished *Wheaton* and *Bender* by noting that, in those decisions, "the conduct of the appellants consisted of seeking redress to arguably legitimate grievances, and doing so with restrained although repetitive actions." Trial Court Opinion, 11/9/2016, at 12. The court explained:

> In this case had [Harmer] endeavored to redress her stated property ownership dispute via the means of continuing to file trespass complaints against her neighbors, or endeavored to continue to contact township authorities in regard to her grievance, she might have been afforded constitutional protection for those types of activities.

*Id.* However, the trial court found that the actions Harmer took to address her property dispute were different in kind from those in the prior cases. The court opined:

*(Footnote Continued)* _____

Act, or to any constitutionally protected activity." 1993, June 23, P.L. 124, No. 28, § 1, imd. effective (emphasis added). *See supra*, n.5.

Here, [Harmer] chose to continue to verbally assault her neighbors at every opportunity. She repeatedly endeavored to engage them in verbal disputes, so much so that the police were constantly being called to the homes in an effort to keep the peace. This court could easily infer the intent to harass or annoy from the testimony of each Commonwealth witness, as to the pervasiveness of the conduct of [Harmer]. It was imminently clear to this [c]ourt that the intent of [Harmer] was to deny the victim Kidd family the quiet enjoyment of their home, and to continue to annoy the family even after receiving criminal citations, and after a hearing before a magistrate. It was also clear to the court, that the victim Kidd family was indeed harassed by the conduct of [Harmer], so much so that the Kidd family children were afraid to come out of the house when they saw [Harmer].

**The video evidence which this [c]ourt viewed left no room for doubt.** In **Duncan**, [**supra**,] the Court said ["]we emphasize that a defendant's acts must seriously offend the average person[."] This court found that [the] actions of [Harmer] would have seriously offended any reasonable person. It is this [court's] determination that criminal conduct occurred, which was not entitled to any constitutional protection.

*Id.* at 12-13 (emphasis added).

Our review of the record reveals ample support for the trial court's ruling. Although Harmer insists her actions were "motivated by" a property dispute,[8] she took no reasonable steps to resolve the conflict. Rather, she repeatedly berated the Kidds and destroyed their property, even after being ordered to refrain from having any contact with them by a magisterial district justice. *See* N.T., 8/25/2016, at 10 (Harmer walked through Kidds' flower bed); 13 (Harmer placed metal stakes along driveway and stared at Mrs. Kidd the day after "no contact" order); 15-16 (Harmer removed

---

[8] Harmer's Brief at 7.

rosebush from Kidds' flowerbed); 23-24 (Harmer repeatedly yelled at Kidd children "asking them to tell their mommy and daddy to give back her bricks."). Moreover, the trial court had the unique opportunity to view videotaped evidence of the encounters, which the court found "left no room for doubt" that Harmer's actions were not constitutionally protected by her right to protect her property, her right to free speech, or her right to redress grievances. Trial Court Opinion, 11/9/2016, at 13. Indeed, when announcing its verdict, the court commented: "I think that [Harmer] went way beyond just simply trying to protect constitutional rights. I think she did it with a degree of subterfuge." N.T., 8/25/2016, at 58. Accordingly, the evidence presented at trial was sufficient to establish Harmer, acting with the intent to harass, annoy or alarm the Kidds, engaged in a course of conduct, which served no legitimate purpose. *See* 18 Pa.C.S. § 2709(a)(3).

Because we conclude the evidence was more than sufficient to support the verdict, and the trial court did not err in concluding Harmer's actions were not "constitutionally protected activity,"[9] Harmer is entitled to no relief.[10]

_____

[9] 18 Pa.C.S. § 2709(e).

[10] We note Harmer raises several additional claims in the argument section of her brief, arguing: (1) the harassment statute is unconstitutionally vague; (2) "the absence of fundamental fairness fatally infected the trial[;]" and (3) her conduct was "at most" a "de minimis infraction … not warranting criminal sanctions[.]" Harmer's Brief at 8, 9, 11. However, none of these claims were included in her court-ordered Rule 1925(b) statement. *See*
*(Footnote Continued Next Page)*

- 11 -

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2017

---

_(Footnote Continued)_ ————————————

Concise Statement of Errors Complained of on Appeal, 10/11/2016.
Accordingly, they are waived on appeal. **_Commonwealth v. Diamond_**, 83
A.3d 119, 136 (Pa. 2013), _cert. denied_, 135 S.Ct. 145 (U.S. 2014).