J-E01013-16

2016 PA Super 83

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT WAYNE TAYLOR, II, | |
| Appellant | No. 1723 WDA 2013 |

Appeal from the Judgment of Sentence of September 24, 2013
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-MD-0000212-2013

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT WAYNE TAYLOR, II, | |
| Appellant | No. 1724 WDA 2013 |

Appeal from the Judgment of Sentence of September 24, 2013
In the Court of Common Pleas of Armstrong County
Criminal Division at No(s): CP-03-MD-0000197-2013

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, LAZARUS, MUNDY, OLSON, OTT, and STABILE, JJ.

DISSENTING OPINION BY BENDER, P.J.E.: **FILED APRIL 11, 2016**

While I agree with the Majority's determination that the first three elements of indirect criminal contempt (ICC) were proven by the Commonwealth, I disagree that the Commonwealth proved the fourth element: that Appellant acted with wrongful intent. Therefore, I respectfully dissent.

As the Majority points out, the PFA order filed against Appellant precluded him from abusing, harassing, stalking, or threatening J.N.K. **See** Majority Decision at 6 (quoting PFA Order, 5/18/12, at 1). In this context, I would consider the wrongful intent element of ICC as requiring proof that Appellant communicated with J.N.K. in order to abuse, harass, stalk, or threaten her. **See Commonwealth v. Walsh**, 36 A.3d 613, 619 (Pa. Super. 2012) (stating that to prove ICC of a PFA order that stated the appellant "shall not abuse, harass, stalk or threaten any of the above persons," and prohibited the appellant from contacting the petitioner, the Commonwealth was required to prove "that he knowingly and willfully made **threatening or harassing** statements" to the petitioner) (emphasis added). Additionally, this Court has stressed that,

> [i]t is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly *intentional* before imposing sanctions of criminal contempt. As we have stated:
>
>> [A] determination of criminal contempt is a criminal conviction conferring on the contemnor all the negative characteristics of being a convicted criminal. The right to be free of the stigma of an unfounded criminal conviction is the hallmark of American jurisprudence.

**Commonwealth v. Haigh**, 874 A.2d 1174, 1177-78 (Pa. Super. 2005) (emphasis in original) (quoting **Commonwealth v. Baker**, 722 A.2d 718, 722 (Pa. Super. 1998) (*en banc*)).

- 2 -

In **Haigh**, this Court reversed Haigh's conviction of ICC of a PFA order, which was based on his communicating with his wife in a non-threatening manner during a court proceeding. **Haigh**, 874 A.2d at 1177. While I acknowledge that **Haigh's** holding rested on a very narrow factual basis, I find it important that our sufficiency analysis focused on *both* Haigh's intent, *and* on the severity and type of communication that occurred. **See id.** at 1178 (reversing Haigh's ICC conviction because "the record [did] not support the determination that [Haigh] intended to violate the final PFA order *and* because the infraction was both *de minimis* and non-threatening….") (emphasis in original).

Undertaking a similar analysis in the present case compels me to conclude that the evidence was insufficient to support either of Appellant's ICC convictions. First, in regard to the incident at Sheetz, "J.N.K. testified that Appellant was 'asking about what was going on with [another] house [the parties' jointly owned] and that [Appellant] wanted to move into it' and that Appellant 'approached [her] in regards to the sale of the other house.'" Majority Decision at 8 (quoting N.T., 7/29/13, at 10). This testimony does not establish that Appellant's communication with J.N.K. was abusive, harassing, or threatening. Indeed, J.N.K. stated that Appellant told her he did "not want to move into the other house if it [were] going to be a PFA violation[,]" thus indicating that Appellant's intent in communicating with her was to *avoid* violating the PFA order. N.T. at 11. Moreover, the infraction was *de minimis* and clearly non-threatening, as J.N.K. engaged in the

- 3 -

conversation with Appellant rather than leaving the scene. Therefore, I would conclude that the evidence was insufficient to demonstrate that Appellant acted with wrongful intent to support his conviction of ICC.

Additionally, I believe it was an abuse of discretion for the trial court to conclude that Appellant exhibited wrongful intent when sending the July 13, 2013 text message. The court found that Appellant's purpose in sending this message "was to discuss with [J.N.K.] the outstanding issues regarding their jointly-held real property and to impress upon her [Appellant's] desire to come to a quick resolution." Trial Court Opinion (TCO), 12/13/13, at 6). Again, this message was not sent to abuse, harass, stalk, or threaten J.N.K., and a text message communication (which J.N.K. was free to ignore) is even more *de minimis* an infraction than the face-to-face exchange at the Sheetz store.

Furthermore, I also believe that the trial court's interpretation of Appellant's message completely ignores his statement, "So if you could please talk to her about it, **me and the girls can start moving into it**." N.T. at 6 (emphasis added). Reading Appellant's message as a whole demonstrates that his purpose in communicating with J.N.K. was to discuss the legitimate issue of their children's housing. Such communication was permissible under the parties' custody consent order. Therefore, I would reverse Appellant's ICC conviction for this communication as well.

In sum, I would conclude that the evidence was insufficient to sustain either of Appellant's two counts of ICC, and I would reverse his judgment of

sentence on that basis. I cannot agree with the Majority that these facts justify Appellant's being a convicted criminal, and subject to all the "negative characteristics" that accompany that designation. *Haigh*, 874 A.2d at 1177. Accordingly, I dissent.

Judges Mundy and Ott join this Dissenting Opinion.