J-S96008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VAUGHN YOUNG, | |
| Appellant | No. 1984 WDA 2015 |

Appeal from the Judgment of Sentence Entered November 18, 2015
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-11-001438

BEFORE: BENDER, P.J.E., BOWES, J., and SOLANO, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JANUARY 23, 2017**

Appellant, Vaughn Young, appeals from the judgment of sentence of an aggregate term of 1 year incarceration, imposed after he was convicted of two counts of indirect criminal contempt (ICC). Appellant challenges the sufficiency of the evidence to support his convictions. After careful review, we affirm.

The trial court summarized the underlying procedural history of this case as follows:

> Family Division Plaintiff Tamara Reese sought and obtained a temporary [Protection From Abuse (PFA)] Order against her ex-boyfriend, [Appellant] … on September 8, 2011.[1] A final hearing was held, and a final PFA Order was entered on September 19, 2011. Thereafter, [Appellant] was arrested and

---

[1] **See** Protection From Abuse Act, 23 Pa.C.S. §§ 6101-6122.

charged with numerous counts of [ICC] for violating that PFA….[2]

…

[Appellant] was subsequently arrested on August 21, 2015 and October 23, 2015 for additional violations of the no-contact provisions of the PFA. A hearing on those charges was held before this [c]ourt on November 18, 2015. [Appellant] was found guilty of both counts of [ICC] and was sentenced to two (2) consecutive terms of imprisonment of six (6) months.

TCO at 1-3.

Appellant filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Therein, Appellant raised two issues:

a. The evidence was insufficient to prove, beyond a reasonable doubt, that [Appellant] had prohibited contact with the protected parties noted within the [PFA] order.

b. [The trial] [c]ourt erred in not granting [Appellant's] Petition to accept Post-Sentence Motion *Nunc Pro Tunc*, thus preventing him from raising certain claims on appeal as they were not preserved through the required post-sentence motions.

Rule 1925(b) Statement, 2/18/16, at ¶ 10.

_____

[2] The trial court lists the dates and dispositions for each of Appellant's ICC charges. **See** Trial Court Opinion (TCO), 4/12/16, at 2. Briefly, several of Appellant's earliest ICC charges were dismissed because Reese failed to appear for court or "did not wish to proceed[.]" **Id.** Appellant pled guilty to six other ICC charges stemming from conduct in 2014 and early 2015. For those convictions, he received consecutive terms of probation. In June of 2015, Appellant was convicted of another count of ICC and sentenced to 90 days' incarceration. Following that conviction, the PFA order was extended until July of 2018.

Now, on appeal, Appellant has abandoned the second claim raised in his concise statement, and he presents only the following issue concerning the sufficiency of the evidence to support his convictions:

I. Was the evidence … insufficient as a matter of law to convict [Appellant] of either count of [ICC] where the language of the PFA order was not so clear, definite and specific as to leave no doubt that [Appellant's] conduct was prohibited and where the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] acted with wrongful intent?

Appellant's Brief at 4.

It is apparent that the precise arguments Appellant asserts herein were not specifically set forth in his Rule 1925(b) statement. Typically, we would conclude that Appellant has waived those claims for our review. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (P. 1998) (creating the bright-line rule that "[a]ppellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to Rule 1925[,]" and "[a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived."); *see also* Pa.R.A.P. 1925(b)(4)(vii). However, our review of the record reveals that the trial court's order did not comply with the dictates of Rule 1925(b)(3). Specifically, the court did not inform Appellant "that any issue not properly included in the Statement … shall be deemed waived." Pa.R.A.P. 1925(b)(3). Consequently, we will not deem Appellant's claims waived for our review. *See Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) (holding that, "[i]n determining whether an

appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[;] … therefore, we look first to the language of that order") (citations omitted).

Before examining the merits of Appellant's challenge to the sufficiency of the evidence to sustain his ICC convictions, we note that:

> [W]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court's decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion. Yet we remain mindful that the power to impose a sanction of criminal contempt should not be used when a lesser means would suffice, as it is an actual criminal conviction.
>
> A finding of criminal contempt must be supported by the following four elements:
>
> (1) The [court's] order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;
>
> (2) The contemnor must have had notice of the specific order or decree,
>
> (3) The act constituting the violation must have been volitional; and
>
> (4) the contemnor must have acted with wrongful intent.

***Commonwealth v. Haigh***, 874 A.2d 1174, 1176–77 (Pa. Super. 2005) (internal citations and quotation marks omitted).

Presently, Appellant first challenges his conviction of ICC stemming from his conduct on August 21, 2015. On that date, Appellant

> contacted Tamara Reese's mother, sister and brother-in-law on Facebook in an attempt to get them to 'talk some sense into'

- 4 -

> Tamara regarding dropping the PFA and letting [Appellant] see their daughter, … who is also a protected party under the PFA. [Appellant] also contacted [the daughter's] school to inquire about her.

TCO at 3. According to Appellant, the language of the PFA order did not clearly and definitively inform him "that contacting Reese's family members to determine [his daughter's] well-being and to express his desire to have a relationship with [his daughter] was prohibited…." Appellant's Brief at 11.

Appellant's argument is unconvincing. Initially, the evidence at the ICC hearing demonstrated that Appellant did **not** contact Reese's family for the sole purpose of inquiring about his daughter's well-being, or to inform them that he wished to have a relationship with his daughter. Rather, Appellant sent Facebook messages to three members of Reese's family in an attempt to have those third parties **talk to Reese** and convince her to drop the PFA order and/or to allow Appellant to see their daughter. For instance, Ebony Evans, Reese's sister, testified that she read messages that Appellant wrote to her husband in which Appellant was "trying to get my husband to talk to my sister about letting him see [his daughter]" and "to talk to [Reese] as her family" about the PFA order. N.T., 11/18/15, at 14. Evans further testified that Appellant sent her messages on Facebook asking her to "talk some sense into" Reese. **Id.** at 17. Additionally, Reese's mother, Terry Lunsford, took the stand at the hearing and testified that she also received a message from Appellant on Facebook asking her "to talk to [her] daughter because they were having problems." **Id.** at 21.

The testimony by Evans and Lunsford proved that Appellant contacted members of Reese's family for the purpose of having those individuals **contact Reese** to encourage her to drop the PFA order and/or allow Appellant to see their daughter. The PFA order unambiguously states that Appellant "shall not contact Plaintiff, or any other person protected under this order, either directly or indirectly, by telephone or any other means, **including through third persons**." Final PFA Order, 9/15/11, at 2 (emphasis added). This language clearly notified Appellant that contacting Reese's family members, for the purpose of having them communicate with Reese, was prohibited.

Moreover, we reject Appellant's argument that his communication with these third parties did not violate the PFA order because he only told them "to discuss the matter with Reese **amongst themselves.**" Appellant's Brief at 16 (emphasis in original). While Appellant may not have asked Reese's family members to relay any specific message to her, his request that they 'talk to Reese' was obviously an attempt to have them communicate to Reese Appellant's desire to see his daughter, and his hope that she would drop the PFA against him. The language of the PFA order explicitly precluded such indirect contact through third parties. Thus, the evidence

was sufficient to support Appellant's ICC conviction for his conduct on August 21, 2015.[3]

Likewise, we also deem meritless Appellant's claim that the Commonwealth failed to present sufficient evidence to sustain his ICC conviction stemming from his October 23, 2015 act of sending Reese a 'friend request' on Facebook. Appellant asserts that this act did not violate the PFA order because it was non-threatening and *de minimus*, similar to the appellant's conduct in **Commonwealth v. Haigh**, 874 A.2d 1174 (Pa. Super. 2005). In that case, Haigh's wife had obtained a PFA order against him. During an ICC hearing based on Haigh's allegedly violating that order, he asked his wife, who had just undergone a recent surgery, if she was "okay[,]" and he "urged her to write him in prison about her prognosis." **Haigh**, 874 A.2d at 1176. For these comments, Haigh was charged with another count of ICC, and he was ultimately convicted of that offense.

On appeal, this Court reversed Haigh's conviction on the following grounds:

> In the case *sub judice,* the final PFA order prohibited [Haigh] from having any contact with his wife "at any location." Although this language seems unambiguous on its face, context ultimately caused confusion for [Haigh] in that he was literally brought into a form of contact with his wife during the PFA violation hearing. Moreover, both [Haigh] and Mrs. Haigh had

---

[3] Because Appellant's communication with Reese's family members was sufficient to sustain that ICC conviction, we need not assess whether his act of calling his daughter's school on August 21, 2015, also violated the PFA order.

the opportunity to speak at this hearing. A reasonable person could have believed, and [Haigh] did believe, that the PFA order was relaxed to some extent in the courtroom context, especially where [Haigh] was shackled and the victim was protected by an armed deputy sheriff. [Haigh] did not believe that he was threatening Mrs. Haigh, and neither she nor any one [*sic*] else in the courtroom heard [Haigh] threaten her or otherwise make any threatening movements or gestures towards her. [Haigh's] questions arose from his concern for the health of his wife of thirty-one years, even though they were estranged at the time. After a thorough review of the record, we conclude, based upon all of the circumstances, that [Haigh] did not act with wrongful intent by engaging in this conversation with his wife in the courtroom.[4] Intentionally acting in such a manner, in the presence of Judge Campbell, the deputy sheriff, the prosecutor and every other person gathered in the court room, would have been nothing short of irrational, and there is nothing in the record to indicate that Appellant was in any way irrational on the day of the hearing. In fact, the judge concluded that [Haigh] was sufficiently rational to enter guilty pleas to two prior violations of the PFA at the very same hearing.

---

[4] Indeed, in actuality, Appellant's conversing with his wife while *in the courtroom* does not even fit within the definition of *indirect* criminal contempt, which addresses contemptuous actions **outside the presence of the court**. **See** [**Commonwealth v.**] **Baker**, 722 A.2d 718 (Pa. Super. 1998) (*en banc*)].

---

It is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly *intentional* before imposing sanctions of criminal contempt. As we have stated:

[A] determination of criminal contempt is a criminal conviction conferring on the contemnor all the negative characteristics of being a convicted criminal. The right to be free of the stigma of an unfounded criminal conviction is the hallmark of American jurisprudence.

**Baker**, 722 A.2d at 722.

Under the peculiar circumstances of this case, because we conclude that the record does not support the determination that [Haigh] intended to violate the final PFA order *and* because the

infraction was both *de minimis* and non-threatening, we are constrained to hold that the trial court did abuse its discretion in convicting [Haigh] of [ICC].

*Haigh*, 874 A.2d at 1177-78 (one footnote omitted; emphasis in original).

The facts of Appellant's case are distinguishable from the unique circumstances in *Haigh*. Appellant was not brought into contact with Reese in a courtroom setting. Moreover, unlike in *Haigh*, nothing in the record demonstrates that Appellant contacted Reese via Facebook because he reasonably believed the PFA order was 'relaxed' in the context of online communication. Instead, Appellant testified at the ICC hearing that he sent the 'friend request' because his Facebook account was 'hacked.' *See* N.T. at 26. The trial court explicitly rejected this testimony, finding it completely incredible. *Id.* at 28.

In sum, the plain language of the PFA order, and the evidence presented at the ICC hearing, convince us that Appellant understood he was not permitted to contact Reese via Facebook, yet he willfully chose to violate the order. While we agree with Appellant that his contact with Reese was *de minimis* and non-threatening, we cannot conclude that it was unintentional, as was the case in *Haigh*. Accordingly, the evidence was sufficient to support Appellant's conviction of ICC based on his contact with Reese in October of 2015.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/23/2017