J-A05027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AMANDA ADAMSKI | : | |
| | : | |
| Appellant | : | No. 617 MDA 2021 |

Appeal from the Judgment of Sentence Entered April 15, 2021,
in the Court of Common Pleas of Luzerne County,
Civil Division at No(s): 2021-00718.

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:   **FILED: SEPTEMBER 28, 2022**

Amanda Adamski appeals from the judgment of sentence imposed after she pled guilty to indirect criminal contempt ("ICC")[1] of a temporary Protection from Abuse ("PFA") order.  Upon review, affirm.

On January 25, 2021, D.M. obtained a temporary PFA order against Adamski, his girlfriend.  The order prohibited Adamski, *inter alia*, from contacting D.M. or going to his residence.  A final PFA hearing was scheduled for March 4, 2021.

In the interim, on February 2, and February 5, 2021, while the temporary PFA order was still in effect, Adamski contacted D.M. on several occasions.  Adamski's brother also texted D.M. and asked him to call Adamski

---

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S.A. § 6114(a).

so she could retrieve her belongings from his residence. D.M. filed a complaint with the police. After determining that Adamski had been served with the temporary PFA order, the police filed an indirect criminal complaint against her.

On April 15, 2021, at the time set for hearing in this matter where Adamski was represented by counsel, Adamski negotiated a plea agreement with the Commonwealth. Specifically, she would admit to the attempted contact with D.M., and, in exchange, would receive 6 months' probation. The trial court accepted the plea and sentenced her to 6 months' probation. Adamski did not file a post-sentence motion.

Afterwards, Adamski informed counsel that she believed it was improper for her to be charged with ICC for attempting to contact D.M. when she had no place to live. Adamski demanded that an appeal be filed.

Adamski filed a timely appeal. Additionally, her new counsel filed a petition to withdraw from representation and an **Anders** brief with this Court. Therein, counsel claimed that there were no issues of arguable merit based upon waiver.

On April 14, 2022, this Court denied counsel's petition to withdraw. Upon our independent review, we found that the trial court failed to inform Adamski of her right to file a post-sentence motion, and consequently, she had not waived her right to challenge the validity of her guilty plea. Further, because the court failed to conduct a formal colloquy, we concluded that there was an issue of arguable merit. We therefore directed counsel to file an

appropriate response. Counsel filed an advocate's brief, which we now consider.

On appeal, Adamski raises the following single issue:

1. Did the trial court abuse its discretion and/or err in accepting [Adamski's] guilty plea because she neither understood the nature of the charge against her, her right to a hearing and a factual basis was not placed upon the record to establish that she contacted a protected party rendering her plea unknowing and involuntary?

Adamski's Brief at 3.

Adamski challenges the validity of her guilty plea, claiming that it was not made knowingly, voluntarily, and intelligently, and therefore, it was constitutionally inadequate. Specifically, she argues that the trial court failed to conduct a proper colloquy, failing to inform her of the nature of the charge against her, what conduct violated the temporary order, and whether she understood she had a right to a hearing. Adamski further maintains that had the trial court done so, it would have been evident that she did not act with wrongful intent to violate the PFA; instead, she only contacted D.M. because she had nowhere else to live and was just trying to get her belongings. Adamski's Brief at 7.

In reviewing this matter, we are mindful of the following. The decision to enter a plea must be knowingly, voluntarily, and intelligently made. To ensure that a plea satisfies these requirements, the trial court should, at a minimum, elicit the following information:

(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

- 3 -

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Pa.R.Crim.P. 590(A)(1) cmt.[2] This Court has further summarized:

In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

*Commonwealth v. Fluharty*, 632 A.2d 312, 314 (Pa. Super. 1993).

Importantly, the objective is to ensure that defendants understand what they are doing when they enter a guilty plea. In making that determination, the reviewing court will look to the guilty plea colloquy to determine whether a defendant's plea was voluntary, knowing, and intelligent.

---

[2] The Comment to Rule 590 includes a seventh proposed question that is only applicable when a defendant pleads guilty to murder generally. Additionally, there is no right to a jury for violation of a PFA order.

Furthermore, "one charged with an indirect criminal contempt is to be provided the [same] safeguards which statue and criminal procedures afford." ***Commonwealth v. Baker***, 722 A.2d 718, 720 (Pa. Super. 1998). To prove indirect criminal contempt, the evidence must establish that:

> (1) the order must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited; (2) the contemnor must have had notice of the specific order or decree; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent.

***Id.*** at 721. "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." ***Commonwealth v. Padilla***, 885 A.2d 994, 996 (Pa. Super. 2015).

Here, our review of the record showed that, prior to Adamski pleading guilty for contacting D.M., the following exchange occurred:

> Mr. Grochal: If you would give me — I'd ask if you would give me a moment to speak to her. I may be better able to explain the situation to her. Right now it seems to not be working.
>
> The Court: All right. Take a minute
>
> (Whereupon, a brief recess was held.)
>
> The Court: [D.M.] vs. Adamski. Are you able to —
>
> Mr. Grochal: I believe that we have an agreement, Your Honor.
>
> The Court: Okay. Let's try this again.
>
> Mr. Cardone: We do have an agreement for an admission, Your Honor, for six months [of] probation. That's what the Commonwealth would be asking for.
>
> Mr Grochal: All I would ask, Your Honor, is that we make sure on the record Ms. Adamski is agreeing to plead guilty to this offense.

The Court: Is that accurate, Ms. Adamski? Are you agreeing to plead guilty or admit that you did what's — they're indicating?

[Adamski]: Yes, I'm really sorry.

The Court: But you know that you can't have any contact?

[Adamski]: Yeah, yeah.

The Court: Are you aware of that now?

[Adamski]: Yeah.

Mr. Grochal: I explained it, Your Honor.

N.T., 4/15/20, at 2-3.

Notably, the trial court did not conduct a formal plea colloquy as required under Rule 590.[3] Notwithstanding this, it is evident, considering the totality of the circumstances here, that Adamski understood the nature of her plea and the consequences of it.

We first note that, before Adamski pled guilty, counsel went off the record to clarify for her the proceedings. The exchange on the record that followed shows that Adamski was aware of the substance of the charge and the factual basis for the charge, namely that she contacted D.M. contrary to the PFA order. Counsel confirmed that he explained the situation to Adamski. Further, at the time, Adamski did not contradict this by explaining that she was trying to get her belongings, which might have warranted further discussion regarding her intent. Instead, she acknowledged her wrongdoing and the prohibited conduct; she apologized for her conduct. Lastly, it was

---

[3] We caution the trial court to cover the six questions in Rule 590 as set forth above, even in PFA contempt matters.

- 6 -

evident that, in exchange for her admission, she would receive six months of probation. Consequently, contrary to Adamski's claims, we conclude that she entered a knowing, voluntary, and intelligent plea.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/28/2022