J-A11026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ABDULWAHID MUHAMMAD | : | |
| | : | |
| Appellant | : | No. 1290 MDA 2022 |

Appeal from the Judgment of Sentence Entered June 28, 2022
In the Court of Common Pleas of Luzerne County
Civil Division at No: 4246 of 2022

BEFORE: BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.: **FILED JANUARY 13, 2025**

Appellant, Abdulwahid Muhammad, appeals from the June 28, 2022, judgment of sentence imposing three months of probation for indirect criminal contempt after Appellant's violation of a protection from abuse ("PFA") order.[1] We affirm.

The record reveals that on May 11, 2022, Appellant's wife, Halimah Muhammad ("Halimah") filed a PFA petition on behalf of herself and five-year-old A.M., the daughter of Appellant and Halimah. On that date, the trial court issued a temporary order forbidding Appellant to contact Halimah. Appellant and Halimah were engaged in a custody dispute for A.M., who was not a protected party under the PFA order.

---

[1] **See** 23 Pa.C.S.A. § 6114.

On June 17, 2022, the Wilkes-Barre City Police Department charged Appellant with indirect criminal contempt because he repeatedly contacted Halimah after the PFA order was issued. The trial court conducted a hearing on June 28, 2022, and found Appellant guilty and imposed three months of probation. This timely appeal followed.[2]

"A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court." *Commonwealth v. Baker*, 722 A.2d 718, 720 (Pa. Super.1998) (*en banc*), *aff'd* 766 A.2d 328 (Pa. 2001).

> Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for a violation of the protective order. The role of criminal contempt and that of many ordinary criminal laws seem identical—protection of the institutions of our government and enforcement of their mandates. Thus, as with those accused [of] other crimes, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford.

---

[2] On October 14, 2022, the trial court directed Appellant to file a concise statement of matter complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant did not do it within the 21-day time frame, but later sought permission to file a concise statement *nunc pro tunc* in a motion that included a copy of the proposed concise statement. Appellant's counsel claimed he did not receive a copy of the order by mail, and that an email notification of the trial court's Rule 1925 order went into a spam folder. The trial court, having already issued an opinion, refused to permit a *nunc pro tunc* concise statement. Because the trial court's opinion adequately addresses the issue before us and our appellate review has not been hampered by the absence of a concise statement, we will dispose of this appeal on the merits. *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (holding that where the appellant files an untimely concise statement and the trial court issued an opinion on the merits, we may proceed to the merits without remanding for compliance with Rule 1925).

*Id.* at 720-21.

"When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge." **Commonwealth v. Haigh**, 874 A.2d 1174, 1176 (Pa. Super. 2005), *appeal denied*, 887 A.2d 1240 (Pa. 2005). We will not reverse a trial court's finding of contempt absent a plain abuse of discretion. *Id.* at 1177. "Yet we remain mindful that the power to impose a sanction of criminal contempt should not be used when a lesser means would suffice, as it is an actual criminal conviction." *Id.* A finding of criminal contempt involves four elements:

> (1) The [court's] order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;
>
> (2) The contemnor must have had notice of the specific order or decree,
>
> (3) The act constituting the violation must have been volitional; and
>
> (4) the contemnor must have acted with wrongful intent.

*Id.*[3]

Regarding the requirement of a definite, clear, and specific order, the **Baker** Court wrote:

> The necessity that the order clearly and specifically set forth the prohibited conduct is in keeping with the requirement that penal statutes may not be unconstitutionally vague. A penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is

---

[3] Elements two and three are not presently in dispute.

prohibited and that it be done in a manner that does not encourage arbitrary and discriminatory enforcement.

***Baker***, 722 A.2d at 721. In ***Baker***, the defendant was served with a copy of a temporary PFA order while he was incarcerated. The order required the defendant to "refrain from abusing, harassing, threatening and stalking the Plaintiff or placing her in fear of abuse in any place where she may be found." ***Id.*** In the presence of two deputy sheriffs who served the order on him, the defendant said, "I'm going to kill this bitch." ***Id.*** at 720. The trial court found him guilty of indirect criminal contempt and imposed six months of incarceration. ***Id.*** The ***Baker*** Court reasoned that the order was insufficiently specific to apply to the defendant's statement.

> While we have no difficulty concluding the statement made by [the defendant] in the presence of the deputies can be viewed as threatening in nature, we find the trial court order which [defendant] was convicted of violating can be interpreted to permit this statement, as long as it did not occur in the plaintiff's presence or place her in fear.

***Id.*** at 722.

Regarding the element of wrongful intent, the ***Haigh*** Court wrote that "[i]t is imperative that trial judges use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly *intentional* before imposing sanctions for criminal contempt." ***Id.*** (italics in original). There, the defendant was charged with ICC based on a statement he made to his wife when both were present in court. Their son had informed the defendant that the wife had a mass in

her chest, and the defendant was inquiring as to his wife's health. This Court

concluded that wrongful intent was lacking:

> In the case sub judice, the final PFA order prohibited Appellant from having any contact with his wife "at any location." Although this language seems unambiguous on its face, context ultimately caused confusion for [a]ppellant in that he was literally brought into a form of contact with his wife during the PFA violation hearing. Moreover, both [a]ppellant and Mrs. Haigh had the opportunity to speak at this hearing. A reasonable person could have believed, and [a]ppellant did believe, that the PFA order was relaxed to some extent in the courtroom context, especially where [a]ppellant was shackled and the victim was protected by an armed deputy sheriff. Appellant did not believe that he was threatening Mrs. Haigh, and neither she nor anyone else in the courtroom heard [a]ppellant threaten her or otherwise make any threatening movements or gestures towards her. Appellant's questions arose from his concern for the health of his wife of thirty-one years, even though they were estranged at the time.

*Id.*

Instantly, the May 11, 2022, temporary PFA order forbade Appellant to

contact Halimah by call, text, email or social media. In dispute here is the

proper application of paragraphs three, four, and five of the order. Paragraphs

three and four read as follows:

> 3. Except for such contact with the minor child/ren as may be permitted under Paragraph 5 of this order, Defendant is prohibited from having ANY CONTACT with Plaintiff, or any other person protected under this order, either directly or indirectly, at any location, including but not limited to any contact at Plaintiff's school, business, or place of employment.
>
> **No phone calls, no texting, no social media, no email contact.**
>
> 4. Except for such contact with the minor child/ren as may be permitted under Paragraph 5 of this order, Defendant shall not

contact Plaintiff, or any other person protected under this order, by telephone or by any other means, including through third persons.

PFA Order, 5/11/22, at ¶¶ 3-4.[4] Paragraph 5 of the order notes that a custody action is pending between Appellant and Halimah in Luzerne County at docket number 5085 of 2021. *Id.* at ¶ 5. Paragraph five also notes that the PFA order "shall not" supersede the custody order, with the pre-printed words "shall not" underlined by hand. *Id.* In essence, then the PFA order was full no contact order, subject to the custody order.

The custody order grants Appellant and Halimah shared physical custody of A.M. on an alternating weekly basis. Custody Order, 6/17/21, at ¶ 4.[5] The custody order designates a time and location for weekly custody exchanges. *Id.* There are two other items of import in the custody order:

6. There shall be unmonitored daily telephone/video communications nightly at 8:00 p.m. between the minor child and the party not then in physical custody of the minor child. Any missed call must be returned within twenty-four (24) hours. The minor child may at any time initiate telephone contact upon their request with the parent not then in physical custody of the minor child.

[…]

8. The parties shall share all relevant social, medical, religious, and educational information concerning the minor child

---

[4] The PFA order is a preprinted form. The bolded language under paragraph three appears on blank lines under the preprinted text. It appears to have been stamped onto the form.

[5] The custody order appears in the record as Exhibit 2 to Appellant's August 2, 2022, motion for reconsideration. The order was not presented as evidence at the hearing on this matter.

- 6 -

in a timely and forthright manner. The parties shall at all times keep each other informed as to the identity, address and telephone number of any physician, dentist, therapist, agency or other provider of services to the child. The parties shall encourage the minor child to be involved in educational and recreational activities and will cooperate to insure the minor child shall attend activities to the maximum extent possible.

*Id.* at ¶¶ 6, 8.

After the trial court issued the temporary PFA order, Appellant sent Halimah over twenty text messages between May 31 and June 15, 2022. N.T. Hearing 6/28/22, at 9-10. The first two of those messages were pictures of the original PFA order, and they came from a number that Appellant had not used to contact Halimah before. *Id.* Another was a picture of a report Appellant made to Children and Youth Services. *Id.* The remainder were requests to speak to A.M. *Id.* Appellant testified that one of his communications came after Children and Youth contacted him with a question about A.M.'s location. *Id.* at 13.

Appellant argues that his messages to Halimah were in accordance with the custody order, which was not superseded by the PFA order. He claims that the PFA order, which expressly did **not** supersede the custody order, is not sufficiently definite, clear, and specific to prohibit his messages to Halimah. And given the uncertainty brought about by the interplay of the two orders, Appellant claims there is no evidence that he acted with wrongful intent. We disagree.

As noted above, trial courts have broad discretion in discerning whether a person subject to a court order has violated it. The instant record reflects that, after the temporary PFA order, Appellant obtained a new phone number and contacted Halimah at least twenty times in just over two weeks. Two of these messages—pictures of the PFA order—were entirely unrelated to A.M. and/or the custody of her. The others were general requests for contact with A.M. Neither party addresses paragraph six of the custody order, but if Appellant stopped receiving the required nightly calls **from** A.M., then he could have sought redress in the custody action.[6] In any event, nothing in the custody order contemplates or requires contact **from** Appellant to A.M. Thus, none of his repeated requests for contact with A.M. were related to any obligation imposed on Appellant in the custody order.

Appellant also argues that he needed to contact Halimah to facilitate custody exchanges, but because the custody order designates the time and location of the weekly exchanges, that argument is not well taken. Further, none of Appellant's messages to Halimah were made for the purpose of facilitating a custody exchange.[7] Similarly, none of Appellant's messages

---

[6] We express no opinion as to the outcome of any such request.

[7] Given that the charged conduct took place over two consecutive weeks, Appellant should have had physical custody of A.M. for one of those weeks. We gather that this was not the case, given Appellant's repeated requests for contact with A.M. The parties do not address this point in their briefs.

related to paragraph eight of the custody order, which required mutual disclosure of relevant social, medical, religious, and education information.

Thus, even assuming (without deciding) that the PFA order, insofar as it expressly did not supersede the custody order, permitted contact from Appellant to Halimah for certain limited purposes, the record sufficiently demonstrates that Appellant's messages were not tailored to that purpose. The messages were excessive in number and frequency and were not related to any provision of the custody order that arguably might require Appellant to contact Halimah. These facts, along with Appellant's decision to obtain a new phone number[8] before resuming contact with Halima, sufficiently support a finding of wrongful intent. These facts are distinct from those of *Haigh*, where the defendant made one innocuous inquiry about his wife's health while the two were together in a courtroom and the defendant was shackled. And even though the PFA order could have been clearer on how Appellant is to fulfill certain of his obligations under the custody order,[9] it clearly prohibited the

---

[8] We observe that paragraph seven of the custody order requires one party to notify the other in the event of a new phone number. Appellant does not rely on paragraph 7 to justify any of his messages, and neither party addresses that paragraph in its brief.

[9] Despite the outcome here, we acknowledge that there are scenarios in which the PFA order, in tandem with the custody order, may place Appellant in a difficult spot. The PFA order is a boilerplate, pre-printed form with applicable boxes checked and a few handwritten or stamped notations. A boilerplate form may be adequate in some cases, but it poses problems where, as here, it interacts with another court order.

charged conduct because Appellant's communications to Halimah were not for that purpose. Unlike the defendant in **Baker**, therefore, Appellant did precisely what the PFA order unambiguously forbade. The trial court did not commit a plain abuse of discretion in finding Appellant guilty of indirect criminal contempt.

Judgment of sentence affirmed.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/13/2025