J-A11013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEAN M. DONAHUE, | |
| Appellant | No. 1469 MDA 2016 |

Appeal from the Judgment of Sentence April 19, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0003716-2015

BEFORE: SHOGAN and MOULTON, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.: **FILED JUNE 05, 2017**

Sean M. Donahue ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Dauphin County on April 19, 2016, following his conviction for two counts of harassment. The judgment of sentence was made final by the August 30, 2016 order denying Appellant's post-sentence motion. After careful review, we affirm.

The trial court opinion related the factual background and procedural history, which we adopt for purposes of this appeal. Trial Court Opinion, 11/9/16, at 1–4. In brief summary, on January 12, 2015, Appellant was charged with one count of terroristic threats and two counts of harassment[1]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2706 and 2709(a)(4), respectively.

for allegedly e-mailing threats to various Commonwealth employees. On April 18, 2016, a jury trial commenced. The jury was hung as to the terroristic-threats charge, but it found Appellant guilty of the two harassment charges. Subsequently, the district attorney *nol prossed* the terroristic-threats charge.

At trial, four e-mails, each sent to roughly fifty individuals between November 26, 2014, and November 29, 2014, were entered into evidence. Witnesses Lisa Sauder and Mary Jane McMillan both received courtesy copies ("cc") of the e-mails. Generally, the nature of the communications concerned Appellant's grievances and perceived injustices carried out by Commonwealth employees related to his unsuccessful applications for employment and his preferred status as a veteran. While the trial court opinion quotes the e-mails in detail, for our purposes, we observe that Appellant used the following language in his communications to the e-mail recipients – "I will pursue punishment of you"; "[t]hat is a threat"; "You won't have to explain to a judge how you rectify me having spent so much money on civil court actions instead of just buying a $200 gun and $20 box of ammunition and killing your employees, like they accuse me of having . . . a propensity towards"; and "I hope all of you suffer terrible tragedies." N.T., 4/19/16, at 22, 28, 36, 44; Commonwealth Exhibits 1–4.

At trial, Ms. Sauder testified that while she had communicated via e-mail with Appellant over a period of years, his tone had changed, and she

became alarmed after receiving the subject e-mails. N.T., 4/19/16, at 20–21. Ms. Sauder stated that she had never received e-mails referencing guns and that she was afraid. *Id.* at 34. She characterized the tone of the e-mails as "extremely angry," expressing "a potential to do harm." *Id.* at 45. Ms. McMillan also testified that she was alarmed after receiving the e-mails and was concerned enough to notify her supervisor's boss. *Id.* at 73.

As noted, on April 19, 2016, a jury found Appellant guilty of two counts of harassment. On that same date, the trial court sentenced Appellant to two consecutive terms of one-year probation. Appellant filed a post-sentence motion that was denied by operation of law pursuant to Pa.R.Crim.P. 720 (B)(3)(a).

Appellant raises the following issues for review:

I. Was not the evidence insufficient to support [Appellant's] conviction for harassment, 18 Pa.C.S. § 2709(a)(4), where [Appellant's] language cannot be construed as "true threats" and is therefore protected speech under the United States and Pennsylvania Constitutions?

II. Was it not a violation of [Appellant's] double jeopardy rights for the court to impose separate sentences for two counts of harassment, 18 Pa.C.S. § 2709(a)(4), where the two counts were redundant statements of the very same conduct?

Appellant's Brief at 5 (full capitalization omitted).

Initially, Appellant submits that in reviewing his sufficiency argument, this Court should employ an "independent review" standard because his challenge is based upon the exercise of his First Amendment rights. Appellant's Brief at 19. The authority cited for the suggestion that we should

not employ the general deferential sufficiency-of-the-evidence scrutiny is not persuasive; nonetheless, because Appellant's issue concerns a question of law, our review is *de novo*. ***In re Fiedler****,* 132 A.3d 1010, 1018 (Pa. Super. 2016).

Appellant was convicted of two counts of harassment under 18 Pa.C.S. § 2709(a)(4), which states:

> **(a)  Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>
> * * *
>
> (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;

Appellant's challenge to the sufficiency of the evidence is based on his premise that his words cannot be construed as "true threats"; therefore, his conduct was protected speech under the United States and Pennsylvania Constitutions. ***See Commonwealth v. Baker***, 722 A.2d 718, 721–722 (Pa. Super. 1998) (*en banc*) (defining "true threat" as one which "on its face and in the circumstances in which it is made is so unequivocal, unconditionally immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution") (citation omitted).

Appellant's argument that none of the language included in the e-mails indicates a specific threat of violence is unavailing.  In his first e-mail, Appellant stated that he was "pursuing punishment" of Commonwealth

employees. In the second e-mail, he used violent imagery as an alternative to accessing the courts for the relief he felt was due. Finally, although in his fourth e-mail Appellant couched his language to infer that he would only resort to legal means to redress his grievances, he wished "terrible tragedies" on the recipients and referenced the formation of a militia of similarly frustrated citizens. N.T., 4/19/16, at 22, 28, 44; Commonwealth Exhibits 1, 2, and 4.

Appellant cannot credibly argue that his free speech rights were in any way infringed in this matter. While Appellant is free to express his disagreement with the Commonwealth employees concerning his dissatisfaction with state policies, he is not empowered to threaten the employees with reference to guns, ammunition, and militia, veiled though they may be. We agree with the trial court that "this type of behavior is exactly the type of behavior that the harassment statute is meant to prohibit" and adopt its reasoning in concluding that sufficient evidence supports Appellant's conviction. Trial Court Opinion, 11/9/16, at 6.

Appellant next claims that his right against double jeopardy was violated when the trial court imposed two separate sentences for two counts of harassment. Specifically, Appellant contends that his conviction for two

counts of harassment violates the prohibition against multiplicity, *i.e.,* the charging of multiple counts for a single criminal offense.[2]

We affirm the trial court's decision in this regard based upon its well-reasoned response to this assertion: "Appellant wrote three distinct e-mails each of which could independently fulfill the elements of harassment as charged. . . ."[3] Each e-mail contained different statements so that this was not just a single criminal act." Trial Court Opinion, 11/9/16, at 7.

Accordingly, for the above-stated reasons and after careful review of the parties' arguments and the certified record, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/2017

_____

[2] "No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9765.

[3] The e-mail sent on November 29, 2014, is a duplicate of the e-mail sent on November 28, 2014. N.T., 4/18/16, at 28, 36; Commonwealth Exhibits 2, 3.

NOV 09 2016

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
v. : 1469 MDA 2016
: 3716 CR 2015
:
SEAN DONAHUE : CRIMINAL APPEAL

## TRIAL COURT MEMORANDUM OPINION PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

Presently before the Superior Court of Pennsylvania is the appeal of Sean Donahue (hereinafter "Appellant") from the judgment of sentence entered by this Court following a jury trial.

### Procedural History and Factual Background.

On January 12, 2015, Appellant was charged with one count of first degree misdemeanor (terroristic threats)[1] and two counts of third degree misdemeanor (harassment)[2] for allegedly emailing threats to various Commonwealth employees and the media.

In July 2015, bail was set following the preliminary hearing. Shortly thereafter, a Petition for Habeas Corpus and a Petition for Release Pursuant to Rule 600 or, in the alternative, Petition for Bail Reduction were filed. They were both denied, with the denial of the Bail Reduction being reviewed by the Superior Court who denied the request.[3]

On April 18, 2016, a jury trial commenced. At trial, the jury was hung as to the terroristic threats charge, but found guilty on the two harassment charges. The district attorney immediately chose to nolle pros the terroristic threats charge.

---

[1] 18 Pa.C.S.A. § 2706
[2] 18 Pa.C.S.A. § 2709(a)(4)
[3] See 63 MDA 2015

The Commonwealth limited itself to using only 4 emails in its case in chief. Those four emails were each sent to roughly 50 individuals. Lisa Sauder and Mary Jane McMillan were both courtesy copy recipients of the emails. Mary Jane McMillan was in the "to" filed on one email.

The first email reads, in part:

> I now advise you that if you follow through and even entertain the slightest bit of a notion that you and the rest of the Commission have the jurisdiction necessary to pass judgment over my use of federal and state courts, I will pursue punishment of you, the remaining Commission members and the senior employees of the Commission for your even attempting to control access to the courts. By doing so, you will face the very same court actions that PA L&I now claims its employees faced and fear that they still face from me.
>
> That is a threat and I make that threat with the full confidence of Democracy and no fear whatsoever of the federal and state courts. Print this explicit unapologetic threat out and take it to your nearest FBI office or US Attorneys Office. You may take it to your local state Attorney Generals office and Magistrate as well, for I will show no respect for state level immunity for you in this matter.

The second email reads in part:

> Congratulations. You've one. The amount of money I spent on paper copies trying to fight your agency in the courts over the past decade has been more than enough to by a quality assault rifle and an ample supply of ammunition or explosive materials, all of which your staff, your employees and your affiliates accused me of doing and all of which they repeatedly told police they feared. It was all bullshit and you knew it...And you won't even have the balls to walk into a courtroom and file a private criminal charge because you can't push the Court around like you can the civil service commission. You won't have to explain to a judge how you rectify my having spent so much money on civil court actions instead of just buying a $200 gun and $20 box of ammunition and killing your employees, like they accuse me of having been accusing me of having a propensity towards for about a decade...be grateful that your memory of me is associates with reams of paper and email complaints so that you don't have to remember me every time you walk past the hunting section of a department store, like your employees have accused me of for so long, when they should have been focused on getting me a job making enough money to repay

those student loans that are going to be paid off by your law firm's income tax instead of my paycheck because I don't have a paycheck.

The third email read exactly as the second, with a nearly identical recipient list, in a different order.

The fourth email reads in part:

> If L&I and the Civil Service Commission do not start obeying the law that grant me veterans preference for numerous employment related benefits, I am going to find a LEGAL way to pound the shit out of your government agencies and I am going to that method, whatever it is in whatever context makes it LEGAL, to pound your employees into submission until they stop denying me my benefits.
> I hope all of you suffer terrible tragedies as you leave office and I hope you suffer to a much greater degree than you arw actively causing in my life very day. I hope that all of you who are involved in manipulating the civil service laws to prevent me from being employed die in a terrible tragedy of your own doing. I hope each of you feels the regular daily pain that you have intentionally caused in my life for years and still cause today. As you move aggressively to cement that misery into my life before you leave office in January, think of Ferguson, think of the anger and frustration that government oppression is causing in our society...
> I can't accomplish anything with a weapon. I need a unit. I need a militia of equally as frustrated Pennsylvanians and Americans who are fed up with being ignored by government...

Lisa Sauder testified that while she had communicated via email with Appellant over a period of years, the tone changed and she became alarmed. (Notes of Testimony, Jury Trial[4], p. 21). While Ms. Sauder's job required that she interact with people with grievances, she had never, in 26 years at her job, received emails like these before, referencing guns, and she was afraid. (N.T. 34-35). She felt the email was extremely angry and expressed a potential to do harm. (N.T. 45).

Mary Jane McMillan was also alarmed after receiving the emails. (N.T. 72). She had never received emails with that sort of language and was concerned enough to notify her supervisor's

---

[4] Hereinafter "N.T."

boss about them. (N.T. 72-73). She actually went above her supervisor's head because she was so concerned; normally she would have told her supervisor first. (N.T. 73).

Corporal Richard Schur was given the emails by state employees and he was assigned to investigate. He located Appellant and he ultimately charged Appellant in this case.

### Appellant's Statement of Matters Complained of on Appeal

- The evidence was insufficient to support Defendant's conviction for Harassment, 18 Pa.C.S. § 2709(a)(4), where Defendant's language cannot be construed as "true threats" as is therefore protected speech under the First and Fourteenth Amendments of the United States Constitution and Article I, Sections 7 and 20 of the Pennsylvania Constitution.

- The Court imposed an illegal sentence when it sentenced Defendant on two separate counts of Harassment under 18 Pa.C.S. § 2709(a)(4).

### Discussion

"Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Smith*, 2004 PA Super 77, ¶ 24, 853 A.2d 1020, 1028 (2004)

In this case "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures." 18 Pa.C.S.A. § 2709(a)(4).

"Communicates" is defined as:

4 of 8

> Conveys a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means, including telephone, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission.

18 Pa.C.S.A. § 2709(f)

Appellant communicated with the victims via email. Over the course of three days, Appellant sent four emails to numerous people. In those emails, Appellant utilized capital letters, which are often commonly read as shouting. He wished "terrible tragedies" upon the recipients, and he referenced guns, armed uprisings, and indicated he was threatening the recipients with legal action.

Appellant argues that his words cannot be construed as "true threats" and thus are protected under the First and Fourteenth Amendments of the United Sates Constitution and Article I, Sections 7 and 20 of the Pennsylvania Constitution. Pennsylvania's Constitution sets forth the right to freedom of speech in Article I, Section 7. In Article 1, Section 20, the Pennsylvania Constitution provided that citizens may petition "those invested with the powers of government for redress grievances or other proper purposes, by petition, address or remonstrance."

> "When engaged in a constitutionally protected activity of the fundamental nature of freedom of speech, we must exercise restraint in prohibiting the activity lest we destroy the right." However, the right to free speech is not absolute, and certain well-defined, limited classes of speech may be prevented and punished without raising constitutional problems. Lewd, obscene, profane, libelous and insulting or "fighting words those which by their very utterance inflict injury or tend to incite an immediate breach of peace" are not constitutionally protected. Only "true threats" fall within that group of expressions, such as fighting words, which are not constitutionally protected "pure speech." A true threat is one which "on its face and in the circumstances in which it is made is so unequivocal, unconditionally immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution."

*Commonwealth v. Baker*, 722 A.2d 718, 721–22 (Pa. Super. 1998), affd. 564 Pa. 192, 766 A.2d 328 (2001)(citations omitted)

In *Commonwealth v. Walls*, 144 A.3d 926 (Pa. Super. 2016) the Court found that there was sufficient evidence for a conviction of harassment under 18 Pa.C.S.A. 2709(a)(4) where the defendant approached the victim, spoke with her at length, caused her to back up and request that he leave her alone and then yelled that she caused his grandmother's death and she should be next. The victim suffered no physical contact or harm. That defendant was then escorted from the store. The Court reasoned that unless you are attempting to harass or annoy an individual, there is no reason to do such a thing.

Similarly, in this case, there is no reason to send four relatively lengthy emails, which must have taken some time to compose, over such a short time period, if one does not intend to harass or annoy the recipients.

In *Walls*, the defendant indicated that the victim *should be* next. He did not indicate an imminent prospect of causing her harm. He wished future harm to happen to her and did not threaten to cause that harm himself.

Appellant in this case, wished future tragedies and harm upon the recipients of the emails. He even took it a step further in discussing how he should have just bought a rifle and ammunition, rather than waste time with the system. He promises the recipients punishment, nominally via the court, however, he then turns to indicate he promises he is making a threat and has no fear of the courts. He says the recipients should be grateful their memory of him is associated boxes of papers not the hunting section of the store. These statements are inflammatory and clearly intended to alarm the recipients.

Much like the Court in *Walls*, we believe this type of behavior is exactly the type of behavior that the harassment statute is meant to prohibit.

Next we turn to the multiplicity claim. Appellant contends that since the language utilized in the charging document and the jury instructions relates only to one statute and subsection and fails to differentiate in any way, including by naming different victims, the sentence violates the prohibition against double jeopardy found in both the United States and Pennsylvania Constitutions[5].

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765

In this case, Appellant wrote three distinct emails each of which could independently fulfill the elements of harassment as charged and defined in the jury instructions. *See Commonwealth v. Petterson*, 2012 PA Super 146, 49 A.3d 903, 912 (2012) (where a defendant commits multiple distinct criminal acts, the concept of merger for sentencing purposes does not apply). The three distinct emails contained messages which alarmed the recipients enough to warrant contacting the police. Each email contained different statements so that this was not just a single criminal act.

For these reasons, we ask the Superior Court to affirm our judgment of sentence.

---

[5] U.S. Const. amend V; PA Const. art. I, 10

Respectfully submitted:

_____

Deborah E. Curcillo, Judge

Dated: ___11/8/16___

*Distribution:*
The Superior Court of Pennsylvania
Hon. Deborah E. Curcillo
Katie Adam, Esq., Dauphin County District Attorney's Office
James Karl, Esq., Dauphin County Public Defender's Office *10*